MCDERMOTT WILL & EMERY LLP
NICOLE M. JANTZI (*pro hac vice*)
njantzi@mwe.com
PAUL M. SCHOENHARD (*pro hac vice*)
pschoenhard@mwe.com
IAN B. BROOKS (*pro hac vice*)
ibrooks@mwe.com
500 North Capitol Street NW
Washington, DC 20001-1531
Telephone:     (202) 756-8000
Facsimile:     (202) 756-8087

SAMI SEDGHANI (SBN 280437)
ssedghani@mwe.com
415 Mission Street, Suite 5600
San Francisco, CA 94105-2533
Telephone:     (626) 218-3800
Facsimile:     (626) 877-0107

*Attorneys for Plaintiff Cellwitch Inc.*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLWITCH INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>TILE, INC.,<br><br>        Defendant. | CASE NO.  4:19-CV-01315 JSW<br><br>**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Cellwitch Inc. ("Cellwitch"), by its undersigned attorneys, submits this Amended Complaint against Tile, Inc. ("Tile") whereby Cellwitch demands a trial by jury on all issues so triable and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for infringement of U.S. Patent No. 8,872,655 ("the '655 Patent"). A true and correct copy of the '655 Patent is attached hereto as Exhibit A.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

## THE PARTIES

2.     Plaintiff Cellwitch is a corporation organized under the laws of the State of Delaware, with a principal place of business at 85 Delancey Street, Floor 2, New York, NY 10002.

3.     Upon information and belief, Defendant Tile is a privately held company, incorporated and organized under the laws of the State of Delaware.  Tile is registered and conducts business in the State of California, with a principal place of business at 2121 South El Camino Real, Suite 900, San Mateo, CA 94403.

4.     Upon information and belief, Tile is in the business of making, selling, and/or marketing personal object trackers and related apps and accessories.

## JURISDICTION AND VENUE

5.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code § 100, *et seq.*

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a).

7.     Venue is proper in this Judicial District under 28 U.S.C. § 1400(b) because Tile has committed acts of patent infringement complained of herein in this Judicial District, and has a regular and established place of business in this Judicial District.

8.     This Court has personal jurisdiction over Tile because Tile's principal place of business is located in this Judicial District and Tile regularly conducts business in this Judicial District.  Tile has purposefully availed itself of the privilege of conducting activities within this Judicial District.  Tile's activities in this Judicial District are continuous and systematic and give rise to the liabilities sued upon herein.  More specifically, upon information and belief, Tile's activities in this Judicial District include, *inter alia*, selling and offering to sell infringing products in this Judicial District, and marketing and advertising infringing products in this Judicial District. Upon information and behalf, Tile does extensive business within the State of California and earns substantial amounts of revenue through its contacts with the Judicial District.  These activities far exceed the minimum requisite contacts.

1

**CELLWITCH AND ITS INNOVATIONS**

2     9.    A first-mover in the now-robust personal object tracking industry, Cellwitch was

3 founded to develop and market a product and related technology based on the inventions of Hamish

4 Orrick, Aiden Turner, and Matthew Buller.

5     10.    More specifically, Messrs. Orrick, Turner and Buller recognized the significant

6 limitations of then-existing technologies that had been developed to mitigate issues associated with

7 the loss or potential loss of personal objects.

8     11.    Such technologies included those disclosed in U.S. Patent No. 7,095,325, which

9 "shows a system for identifying and informing passers-by that an asset is lost.  Asset tags contain

10 identity information and audio playback mechanisms, and a means to synchronize with a base

11 station.  The asset tag informs passer-by that it is lost if it has not synchronized with the base station

12 within a predefined period of time by emitting a personalized audible signal."  '655 Patent at 1:28-

13 34.

14     12.    Another then-existing technology was disclosed in U.S. Patent No. 7,084,764,

15 which "shows a tethered tag system for monitoring objects across a large physical area, for example

16 a building. Strap-based tags raise an alarm when removed from the objects they have been tethered

17 to."  '655 Patent at 1:35-38.  An illustration of the monitoring tag is reproduced below.

18

19

20

21



22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

**Amended Complaint**
**Case No. C-19-1315 JSW**

13.     Another was disclosed in U.S. Patent No. 7,015,817, which "describes tracking of individuals whereby a tracking device is tethered to an individual and monitored by means of a wireless network." '655 Patent at 1:39-41.

14.     And another was disclosed in U.S. Patent No. 6,967,576 ("Hayes"), which "relates to item location tracking using a wireless device," such as the "Electronic Marker Wireless Device" shown in Hayes' Figure 1 (reproduced below).



*FIG. 1*

15.     Messrs. Orrick, Turner and Buller appreciated that none of these then-existing technological solutions to a widely-experienced problem provided a configuration of devices and communications that enabled multiple "buddy" devices to separately monitor and generate alerts relating to the proximity of monitored items, while also providing relevant information back to a centralized processing system.   They further appreciated that none of the then-existing technological solutions leveraged the network effect made possible by the proliferation of smartphones and similar devices that could be configured such that an increased number of network nodes would increase the chances that all nodes cross each other, with a result that monitored items would be individually and separately monitored on a continuous basis without the need for a direct connection to the owner of the item.

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

16.     In January 2008, Messrs. Orrick, Turner, and Buller filed a PCT patent application identified as PCT/GB2008/050043, which is the application to which the '655 Patent claims priority.

17.     Three years later, after extensive development efforts and fundraising, Cellwitch brought its groundbreaking technology, embodied in the "Ty" product, to the 2011 Consumer Electronics Show (CES) and won a design and innovation award.



([http://tytogether.com/](http://tytogether.com/))

18.     An InfoWorld article entitled "7 wacky products you missed at CES 2011" provided the following description:

> If placing calls, listening to music, checking email, and surfing the Internet don't constitute enough uses for your smartphone, Cellwitch has come up with a way make your mobile phone a guardian of your valuables.
>
> Cellwitch has developed what it calls a loss-prevention device. The item comes in the form of a cloud- and Bluetooth-enabled disc, the size of a poker chip, that you can attach to up to seven personal possessions, such as your wallet, keys, laptop -- even your pet Schnauzer. You can then use your cell phone to track the movements of the chipped items, up to 50 feet away.
>
> For example, if you were about to leave the house or the office without your wallet, if you were to drop your keys, or if one of your chipped items was taken from you, your phone could send out an alert, both with audio and visual warnings. Users can choose from

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

three sensitivities based on how close by they want a given object: an arm's length, a car's length, or a school bus length.

Another innovative feature: Users of the Ty application could help one another find their lost possessions. A lost item can blindly relay an SOS signal -- along with its location -- to its owner via another user's Ty-enabled smartphone. It then tells the relaying Ty app user that they've helped find someone's lost belonging.

Ted Samson, *7 wacky products you missed at CES 2011*, InfoWorld, Jan. 10, 2011, at https://www.infoworld.com/article/2624747/7-wacky-products-you-missed-at-ces-2011.html.

19.     Cellwitch's Ty product comprises a small disc that users can attach to their personal items to keep track of them.

20.     Cellwitch's Ty product is a physical embodiment of the claimed inventions of the '655 Patent.

21.     As further detailed on Cellwitch's website (http://tytogether.com/), the Ty product uses Bluetooth beacon technology and an app on a user's phone to enable tracking of a personal item.  The Ty product can be associated with a user's personal belongings, e.g., attached to keys, placed in a wallet.  Then, using the Ty app, a user can locate items and keep track of their whereabouts.  The Ty product and app feature separation alerts, a distance indicator, movement alerts, custom alerts, last seen location/tracking, and time fencing.  When a proximity threshold from the Ty product (and thus the user's item) to the user's phone is exceeded, the user is alerted. In addition, a Ty product can be shared with a buddy, enabling a second device (and second user) to track the same item.

22.     Upon information and belief, Cellwitch's competitors, including Tile, copied Cellwitch's innovative technology and entered the space in or around 2014 with greater funding positions. Consequently, Cellwitch's competitors rapidly took dominant market share, diminishing Cellwitch's ability to raise additional capital.  The entry of imitators, such as Tile, in the market severely impacted Cellwitch's business.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

**THE PATENT-IN-SUIT**

23.     The '655 Patent, titled "System, Method and Network for Monitoring of Location of Items," was duly and legally issued on October 28, 2014, to inventors Matthew Buller, Hamish Orrick, and Aiden Turner.  Cellwitch is the owner of all right, title and interest in the '655 Patent.

24.     The '655 Patent is subject to a 799-day patent term adjustment, which sets the effective date of expiration as March 31, 2030.

25.     The '655 Patent relates generally to a system and method in which a plurality of tracking devices are associated with one or more users' mobile stations, each of which monitors the proximity of a tracking device and is configured to generate an alert when the tracking device meets or exceeds a proximity threshold.  This arrangement is exemplified in, for example, independent claims 1 and 12 of the '655 Patent.

26.     As claimed in, for example, claims 1 and 12, the '655 Patent captures a specific technical solution to notify a user of a potential loss of an item.  The dependent claims further detail the specific technical solutions embodied by the '655 Patent.  For example, claims 4 and 16 recite specific collected data relating to the wireless devices, such as the time of day when they exceed a threshold, location at which the threshold is exceeded, and frequency with which the threshold is exceeded.  '655 Patent at cls. 4, 16.

27.     The '655 Patent claims a novel system for monitoring of location of items and alerting of potential loss.  The system combines specific hardware and software components in an unconventional way.  The components include wireless devices associated with a monitored item, wireless communication terminals associated with respective users, and a processing system that communicates with the wireless communication terminals and stores data related to the wireless devices and the wireless communication terminals.  This combination of features is uniquely technological and improves on systems for finding lost items available at the time of the '655 Patent.  An embodiment of this system is illustrated in Figure 14 of the '655 Patent.

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.



FIG. 14

28.    "FIG. 14 is a schematic diagram of a network for device monitoring, generally designed by reference number 200, according to an exemplary embodiment of the present invention. The network 200 includes a central processing system, such as central server 210, and a base station 220, as described in previous embodiments. The central server 210 may include a processor 212, a memory unit, such as database 215, and a learning module 217. The network 200 may also include mobile stations 230, 240 and 250, and associated patches 235, 245 and 255. As described previously, the base station 220 may detect patches 225 and relay the detection to the central server 210, where the detected patches 225 may be matched to associated mobile stations 230-260. Also, the mobile stations 230-250 may be configured as "buddies" to one another. For example, the mobile stations 230 may be configured so as to monitor the patches 245 associated with mobile station 240, and in turn, the mobile station 240 may be configured so as to monitor the patches 235 associated with mobile station 230. Any number of mobile stations may be included in a 'buddy' network, so that items may be tracked over a wide network by a number of network members through their mobile stations. In this regard, the network 200 may include any number of mobile stations, patches and base stations. In exemplary embodiments, a network member may select certain items to be monitored by only specific other members within the network 200 by

AMENDED COMPLAINT
CASE NO. C-19-1315 JSW

compiling a list of 'friends' within the network 200, and assigning those 'friends' to the specific items. Thus, the network 200 may function not only as a device monitoring network, but may also provide a social network that allows members to interact by sending messages to one another regarding each others items along with any other information." '655 Patent at 12:50-13:13.

29.     The technology of the '655 Patent is deployed in several primary applications: personal object tracking, anti-theft systems, and proximity marketing.

30.     Upon information and belief, at the time of the '655 Patent, there existed no solution that used a network of personal wireless communication terminals to monitor and notify a particular user to when an item was no longer within a set range of the user. '655 Patent at 1:19-43 ("Existing approaches typically address the tracking and locating of already lost objects but do not address the moment of loss itself. . . .  There is therefore a need for a means of monitoring for the loss of small items and of notifying a person of that loss.").

31.     To solve the problem, the inventors created the novel system described above. *Id.* at 5:36-48.  If the distance between a person's mobile device and small item exceeds a proximity threshold figure, then an alert on the person's mobile device automatically indicates to the person the possible loss. *Id.* at 5:21-26.

32.     The novel system further enables the use of other people's (i.e., "buddies'") mobile devices to aid in the detection and alert of the loss.  This was unlike existing approaches at the time, which "typically address the tracking and locating of already lost objects but do not address the moment of loss itself." *Id.* at 1:19-21.  For example, "[o]bject finders, such as key finders, suffer from being limited to single categories of items such as keys, and moreover require dedicated finder devices that tend to be cumbersome and that are often lost themselves." *Id.* at 1:21-24.

33.     Indeed, the '655 Patent introduced numerous novel teachings over the prior art.  For example, during the prosecution of the application that resulted in the '655 Patent, the Examiner rejected the then-pending claims as obvious over Reisman et al. (U.S. Patent Publication No. 2004/0174264) in view of Hayes.

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

34.     The applicants overcame the rejection by explaining that it would not have been obvious to modify the system of Reisman using the teachings of Hayes to arrive at the then-pending claims.

35.     In fact, the system in Reisman was principally designed to monitor people and not items.  The intended purpose of Reisman's system was to monitor the location of offenders or mentally inept persons.  Consequently, Reisman lacked any teaching to send out an alert at the location where the monitored individual was when the individual exceeded a threshold.  Rather, information would be transmitted upstream to a central monitoring location.  While Hayes disclosed monitoring the location of items, Hayes would not have been combined with Reisman.  Upon this submission, the Examiner no longer relied on Reisman as allegedly teaching the pending claims.

36.     Hayes, meanwhile, provides a very different, and technologically inferior, solution than that disclosed and claimed in the '655 Patent.  For example, Hayes lacks any teaching of a "a processing system that is in communication with the plurality of wireless communication terminals, the processing system comprising a database that collects and stores data related to the plurality of wireless devices and the plurality of wireless communication terminals."  Instead, Hayes discloses "a hub that remains with a user" and whose "primary purpose . . . is to determine the location of the electronic markers 106 through 108 and to inform the user of the hub 102 of the whereabouts of the electronic markers 106 through 108."  Hayes hub "logs the last position data of the electronic marker 106 before it went out of range."  Thus, Hayes does not teach a processing system, as claimed, because there is no database that collects and stores data related to the hub and electronic markers.  Consequently, Hayes has no way of using "buddies" to aid in alerting of and finding a potential loss.

37.     After the applicants traversed the Reisman/Hayes rejection, the Examiner again rejected the claims—this time in view of Kreiner et al. and Hayes.  In response, the applicants amended the claims and conducted an Examiner interview.  "[I]t was agreed during the interview that Kreiner et al. and Hayes et al. do not teach the subject matter of the claims 1, 12 or 24."

38.     The Examiner then allowed the claims.  The Examiner's reason for allowance, *inter alia*, was "[r]egarding claims 1, and 12, patentability resides in 'wherein at least one buddy wireless

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

communication terminal of the plurality of wireless communication terminals is further configured to monitor the proximity of at least one wireless device of the plurality of wireless devices associated with one of the other wireless communication terminals and to generate an alert when the proximity of at least one of the wireless devices associated with one of the other wireless communication terminals from the buddy wireless communication terminal meets or exceeds a proximity threshold to alert the user of the buddy wireless communication terminal to the met or exceeded proximity threshold', in combination with the other limitations of the claim."

39.     Thus, based at least on the above, it is apparent that the claims of the '655 Patent present a technical solution over the prior art, including using the claimed components in a non-convention and non-routine manner to arrive at a novel technical solution.  Indeed, the "buddy" feature of the '655 Patent is enabled through the incorporation of the "processing system," which enables communications between the wireless communication terminals and uses a database that collects and stores data related to the wireless components.  Hayes and other prior art at the time lacked this important claimed feature.  As explained above, InfoWorld, described this claimed feature as "innovative."

40.     The claims of the '655 Patent do not capture human activity.  Claimed features, including the "database" and "buddy" aspects of the '655 Patent, are uniquely technological and provide benefits, such as notifying a user of a loss of her item when the loss occurs.  Tellingly, the claims do not preempt any commonly understood human behaviors or activities.

**INFRINGING ACTS BY TILE**

41.     Leveraging Cellwitch's inventions, Tile has established a dominant position in the personal object tracking sector.  Tile touts itself as the "world's best-selling Bluetooth tracker" with over 20 million Tile units sold and 80% of US retail market share.  https://www.thetileapp.com/en-us/about-tile.

42.     Upon information and belief, Tile realized $100M in revenues in 2016 and was expected to have similar earnings in 2017 and 2018.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

43.     Tile has developed, tested and demonstrated, markets, offers for sale and sells several models of wireless devices used to track personal items, including Mate, Slim and Pro (collectively, "Tile Personal Trackers").  The Tile Mate, Slim and Pro sell for $25, $30, and $35, respectively.



(https://www.thetileapp.com/en-us/products)

44.     Tile specifically encourages consumers to purchase and use multiple Tile Personal Trackers, including by selling Tile Personal Trackers in combo packages.



(https://www.thetileapp.com/en-us/products#combo-packs)



McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

1   45.    Tile has developed, tested, markets, and offers for download to consumers an app

2   ("Tile App").  The Tile App is available through, for example, the App Store and Google Play.

3   46.    Tile provides consumers with a "Welcome to Tile" manual in the box with Tile

4   Personal Trackers.

5   47.    In the Welcome to Tile manual, Tile instructs users to "[d]ownload and open the

6   free Tile app"; "[f]ollow the simple in-app steps to active your Tile device"; and "[attach it to an

7   item you couldn't [sic] live without."

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.



17   48.    Tile Personal Trackers and the Tile App "work together to help find [individual

18   users'] things near or far."



23   (https://www.thetileapp.com/en-us/how-it-works)

49.     Tile instructs users to attach Tile Personal Trackers to items they wish to monitor. Indeed, association with a monitored item is a necessary step in the setup process for each Tile Personal Tracker.



50.     Tile encourages tracking of everyday essentials, such as keys, a wallet, a purse, or a phone.



51.     Once set up, a user's phone/tablet monitors the proximity of the associated Tile Personal Trackers.

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.



52.     When the distance between a Tile Personal Tracker and the primary phone/tablet associated with the Tile Personal Tracker exceeds the threshold of the Tile Personal Tracker's Bluetooth wireless connection, the Tile app on the primary phone/tablet alerts the user to the event by changing the color of the circle around the icon for the Tile Personal Tracker in the user's app from green to grey.  The Tile App also alerts the user to the event, e.g., by presenting the message "No location available just now," and by presenting the user with the option to invoke a search for the device using the "Notify when found" button.



McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

53.     In addition, when a Tile Personal Tracker's Bluetooth communication proximity threshold is exceeded such that communication with the phone/tablet is lost, the Tile App "will immediately record on the map in the App the last time and place [the] Tile and mobile device were connected to each other."

> When that communication is lost, either by closing the app or by exceeding the Bluetooth range, your app will immediately record on the map in the app the last time and place your Tile and mobile device were connected to each other. It's the last place your Tile was seen by the app!

(https://support.thetileapp.com/hc/en-us/articles/220478948)



54.     Tile encourages sharing of Tile devices with other users.  By default, each Tile device can be shared with one other user.

55.     Tile explains: "You can make your search party even bigger! You can share each of your Tiles with one other email address. Sharing a Tile means you and someone you trust can both update the Tile's location, ring the Tile, look for its last known location on the map, and ask to be notified when the Tile is found!"   https://support.thetileapp.com/hc/en-us/articles/205332837-How-do-I-share-my-Tile-.  Tile also provides instructions showing users how to share a Tile device.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

 

56.     Upon information and belief, Tile maintains a processing system that records information regarding all activated Tile Personal Trackers and their associations with users' personal devices running the Tile App.     Indeed, Tile's privacy policy, https://www.thetileapp.com/privacy-policy, provides the following explanation:

> When you activate a Tile using the Tile app, that Tile's unique identifier (or Tile ID) will be associated with your account. . . .
>
> *        *        *
>
> Tile is designed to tell you where your items are.  In order to do that, it's necessary to collect data about your location.  We use the term "Location Information" to refer to the combined location data of your phone or device, and your Tiles.
>
> While the app is running on your device, it periodically transmits your Location Information. . . .
>
> Tile normally only records the latest Location Information update for each of your Tiles, to provide the Last Place Seen.

57.     Accordingly, when used in conjunction with one another per Tile's instructions, multiple Tile Personal Trackers, multiple smartphones running the Tile App, and Tile's processing system comprise a system for monitoring of location of items ("Tile System").

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

*Tile Premium*

58.     In October 2018, Tile launched its Tile Premium service offering.  Tile Premium further leverages Cellwitch's patented technology through features known as "Smart Alerts, Location History, and Unlimited Sharing."  Certain relevant configurations of the Tile System thus also include the functionality of the Tile Premium service.

59.     The Tile Premium service is available for $2.99/month or $29.99/year.

60.     Tile encourages users to sign up for Tile Premium service.



61.     The Tile Premium "Smart Alert" feature enables a user to identify a physical address as a proximity boundary for the user's Tile devices.  When the user leaves the proximity boundary with her phone/tablet but without the associated Tile device, an alert is generated on the user's device.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

1
2
3
4
5
6
7
8
9
10
11



12    62.    According to Tile, "Smart Alerts is incredibly important for us, because what it is,

13  ultimately, is our strategy of moving from Tile being just a reactive place that you come to once

14  you've lost something, to being a proactive service that helps you not lose things in the first place."

15  https://www.fastcompany.com/90285686/how-tracking-startups-trackr-and-tile-lost-and-found-

16  their-way.

17    63.    The Tile Premium "Location History" feature provides users with up to thirty (30)

18  days of location information for each activated Tile Personal Tracker.

19    64.    And the Tile Premium "Unlimited Sharing" feature enables users to share their Tile

20  Personal Trackers with an unlimited number of buddies, each of whom can monitor the proximity

21  of shared Trackers.

22

### *Convoyed Sales of Tile Accessories*

24    65.    In addition to Tile Personal Trackers, Tile offers for sale and sells certain accessories

25  ("Tile Accessories"). The Tile Accessories are specifically designed to facilitate association of Tile

26  Personal Trackers with monitored items. For example, Tile offers custom adhesives for attaching

27  Tile Personal Trackers to anything; a zip strap for attaching Tile Personal Trackers to a bicycle,

28

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

scooter, etc.; an iron-on pocket for attaching Tile Personal Trackers to jackets, coats, blankets, etc.; and a money clip for Tile Personal Trackers.

| Accessories | |
|---|---|
| Adhesives for Tile Pro 2018<br>$3 Online Exclusive<br>Buy Now | Adhesives for Tile Mate 2018<br>$3 Online Exclusive<br>Buy Now |
| Accessory Bundle for Tile Mate<br>$9 Online Exclusive<br>Buy Now | Money Clip for Tile Slim<br>$10 Online Exclusive<br>Buy Now |

(https://www.thetileapp.com/en-us/products/accessories)

*Tile Has Acted Knowingly*

66.     Upon information and belief, Tile has had actual and constructive notice of the '655 Patent since at least as early as 2014.

67.     For example, Cellwitch's Ty product was marked as "Patents Pending" during the pendency of the application for the '655 Patent:



AMENDED COMPLAINT
CASE NO. C-19-1315 JSW

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.



68.     In addition, Tile has had actual notice of the published application for the '655 Patent, since at least as early as 2014.  For example, Tile filed an information disclosure statement (IDS) on April 21, 2014, in connection with Tile's U.S. Patent Application No. 14/167,960, in which Tile cited the published version of the application that yielded the '655 Patent (U.S. Patent Pub. No. 2010-0164715).

### FIRST CAUSE OF ACTION
### (Direct Infringement of the '655 Patent under 35 U.S.C. § 271(a))

69.     Cellwitch incorporates the foregoing allegations as if fully realleged and restated herein.

70.     Upon information and belief, the '655 Patent is valid and enforceable.

71.     Upon information and belief, in violation of 35 U.S.C. § 271(a), Tile has directly infringed and continues to directly infringe the '655 Patent, literally and/or under the doctrine of equivalents, by making and using relevant configurations of the Tile System in the United States in satisfaction of the limitations of one or more claims of the '655 Patent.

72.     Exemplary independent Claim 1 of the '655 Patent recites the following:

**[Preamble]** 1. A system for monitoring of location of items, comprising:

**[1]** a plurality of wireless devices, each of the plurality of wireless devices being associated with a monitored item;

**[2]** a plurality of wireless communication terminals, each of the plurality of wireless communication terminals being associated with a respective user and associated with at least one respective associated wireless device of the plurality of wireless devices and

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

configured to monitor the proximity of the at least one respective associated wireless device and to generate an alert when the proximity of at least one of the associated respective wireless devices from the associated wireless communication terminal meets or exceeds a proximity threshold to alert the respective user to the met or exceeded proximity threshold; and

[3] a processing system that is in communication with the plurality of wireless communication terminals, the processing system comprising a database that collects and stores data related to the plurality of wireless devices and the plurality of wireless communication terminals,

[4] wherein at least one buddy wireless communication terminal of the plurality of wireless communication terminals is further configured to monitor the proximity of at least one wireless device of the plurality of wireless devices associated with one of the other wireless communication terminals and to generate an alert when the proximity of at least one of the wireless devices associated with one of the other wireless communication terminals from the buddy wireless communication terminal meets or exceeds a proximity threshold to alert the user of the buddy wireless communication terminal to the met or exceeded proximity threshold.

73.     Upon information and belief, Tile makes and uses the system of Claim 1 of the '655 Patent at least when it tests and/or demonstrates relevant configurations of the Tile System.

*'655 Patent, Claim 1 Preamble*

74.     The Preamble of exemplary Claim 1 of the '655 Patent reads as follows: "A system for monitoring of location of items, comprising:".

75.     Upon information and belief, and to the extent the Preamble is determined to be a limitation of the claim, Tile makes and uses a system for monitoring of location of items when it tests and/or demonstrates relevant configurations of the Tile System in satisfaction of the Preamble of Claim 1 of the '655 Patent.

*'655 Patent, Claim 1 [1]*

76.     Element 1 of exemplary Claim 1 of the '655 Patent reads as follows: "a plurality of wireless devices, each of the plurality of wireless devices being associated with a monitored item."

MᶜDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
Aᴛᴛᴏʀɴᴇʏs Aᴛ Lᴀᴡ
Wᴀsʜɪɴɢᴛᴏɴ, D.C.

77.     Upon information and belief, relevant configurations of the Tile System satisfy element 1 of Claim 1 of the '655 patent.  For example, relevant configurations of the Tile System comprise a plurality of Tile Personal Trackers.  Each Tile Personal Tracker is a wireless device that, when integrated into the Tile System, is associated with a monitored item (e.g., a lunchbox and a thermos).



(https://www.thetileapp.com/en-us/mate-keys-finder)

**'655 Patent, Claim 1 [2]**

78.     Element 2 of exemplary Claim 1 of the '655 Patent reads as follows: "a plurality of wireless communication terminals, each of the plurality of wireless communication terminals being associated with a respective user and associated with at least one respective associated wireless device of the plurality of wireless devices and configured to monitor the proximity of the at least one respective associated wireless device and to generate an alert when the proximity of at least one of the associated respective wireless devices from the associated wireless communication terminal meets or exceeds a proximity threshold to alert the respective user to the met or exceeded proximity threshold."

79.     Upon information and belief, relevant configurations of the Tile System satisfy element 2 of Claim 1 of the '655 Patent.  For example, relevant configurations of the Tile System comprise a plurality of smartphone or tablet devices ("Personal Device"), each of which is associated with a respective user, and each of which is associated with at least one Tile Personal Tracker.

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

1

2

3

4

5

6

7

8

9

10

11



(https://www.thetileapp.com/en-us/last-place-seen)

12      80.     When a Tile Personal Tracker is activated with a Personal Device, the Tile App

13   running on the device will monitor the proximity of the Tile Personal Tracker.

14

15

16

17



18

19

20

21

22

23

24

25      81.     When the proximity of the Tile Personal Tracker from the Personal Device exceeds

26   a proximity threshold (*e.g.*, the Bluetooth beacon range for the Tracker), the Tile App will generate

27   an alert by, for example, presenting the user with a gray circle, the statement "No location available

28   just now", and the option to activate the community search feature using the "Notify when found"

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

soft key.  In addition, when a Tile Personal Tracker's proximity threshold is exceeded, the Tile App

on the Personal Device "will immediately record on the map in the app the last time and place [the]

Tile and mobile device were connected to each other."



### '655 Patent, Claim 1 [3]

82.     Element 3 of Claim 1 of the '655 Patent reads as follows: "a processing system that

is in communication with the plurality of wireless communication terminals, the processing system

comprising a database that collects and stores data related to the plurality of wireless devices and

the plurality of wireless communication terminals."

83.     Upon information and belief, relevant configurations of the Tile System satisfy

element 3 of Claim 1 of the '655 Patent.  For example, upon information and belief, Tile maintains

a processing system that engages in communication with users' Personal Devices.   Upon

information and belief, Tile's processing system comprises a database that collects and stores data

related to the users' Personal Devices and the Tile Personal Trackers activated with such devices.

Indeed, as detailed above, Tile explains that its processing system collects and stores information

regarding each Tile Personal Device, the Tile Personal Device(s) with which each Tile Personal

Device is associated, and related Location Information.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

1   *'655 Patent, Claim 1 [4]*

2         84.    Element 4 of Claim 1 of the '655 Patent reads as follows: "wherein at least one

3   buddy wireless communication terminal of the plurality of wireless communication terminals is

4   further configured to monitor the proximity of at least one wireless device of the plurality of

5   wireless devices associated with one of the other wireless communication terminals and to generate

6   an alert when the proximity of at least one of the wireless devices associated with one of the other

7   wireless communication terminals from the buddy wireless communication terminal meets or

8   exceeds a proximity threshold to alert the user of the buddy wireless communication terminal to

9   the met or exceeded proximity threshold."

10         85.    Upon information and belief, relevant configurations of the Tile System satisfy

11   element 4 of Claim 1 of the '655 Patent.  For example, in relevant configurations of the Tile System,

12   at least one Tile Personal Tracker is "shared" by the primary Personal Device with which it is

13   associated with a second "buddy" Personal Device.



25   (https://support.thetileapp.com/hc/en-us/articles/205332837-How-do-I-share-my-Tile-)

26         86.    In certain relevant configurations of the Tile System, a Tile Personal Tracker is

27   shared with multiple "buddy" Personal Devices, as permitted to users of the Tile Premium service.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

1

2

3

4

5

6

7

8



9                    (https://www.thetileapp.com/en-us/get-premium)

10    87.    When a Tile Personal Tracker is shared with a buddy Personal Device, the Tile App

11 running on the device will monitor the proximity of the Tile Personal Tracker.  And when the

12 proximity of the Tile Personal Tracker from the buddy Personal Device exceeds a proximity

13 threshold (e.g., the Bluetooth beacon range for the Tracker), the Tile App will alert the user of the

14 buddy Personal Device by, for example, presenting the user with a gray circle, the statement "No

15 location available just now", and the option to activate the community search feature using the

16 "Notify when found" soft key.  In addition, when a Tile Personal Tracker's proximity threshold is

17 exceeded, the Tile App on the buddy Personal Device "will immediately record on the map in the

18 app the last time and place [the] Tile and mobile device were connected to each other."

19    88.    Cellwitch will be substantially and irreparably harmed if Tile is not enjoined from

20 infringing the '655 Patent.

21    89.    Cellwitch has been injured and continues to be injured monetarily and otherwise by

22 Tile's direct infringement of the '655 Patent in violation of 35 U.S.C. § 271(a).  Tile is therefore

23 liable to Cellwitch for the damages suffered by Cellwitch.

24    90.    By this action, Cellwitch seeks recovery of its damages pursuant to 35 U.S.C. § 284,

25 including, without limitation, lost profits and a reasonable royalty.

26    91.    Upon information and belief, Tile's infringement of the '655 Patent has been and

27 continues to be willful.  As further detailed above, Tile has had actual and constructive notice of

28 the '655 Patent since at least as early as 2014.  Despite its knowledge of the '655 Patent and its

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

infringement, Tile has and continues to make and use relevant configurations of the Tile System. Accordingly, Cellwitch is entitled to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION
### (Induced Infringement of the '655 Patent under 35 U.S.C. § 271(b))

92.     Cellwitch incorporates the foregoing allegations as if fully realleged and restated herein.

93.     Tile has indirectly infringed and is still indirectly infringing the '655 Patent in violation of 35 U.S.C. § 271(b) by actively inducing infringement of the '655 Patent.

94.     Tile, with knowledge that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent, has induced and continues to induce its customers and users to directly infringe the '655 Patent by, for example, specifically instructing such customers and users to make and use relevant configurations of the Tile System in satisfaction of one or more claims of the '655 Patent, including Claim 1, in the manner described herein.

95.     As detailed above, Tile has had active and constructive knowledge of the '655 Patent and its related patent applications since at least as early as 2014.  Accordingly, Tile has known or should have known that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent since no later than October 28, 2014, the date on which the '655 Patent issued.  At minimum, Tile will have actual notice that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent at least as of the date of filing and/or service of this Complaint.

96.     Upon information and belief, Tile's customers and users directly infringe one or more claims of the '655 Patent when they make and use relevant configurations of the Tile System by activating multiple Tile Personal Trackers with multiple Personal Devices and share such Trackers with buddy Devices in, for example, the manner(s) described above.

97.     Despite knowledge that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent, Tile continues to take numerous active steps to encourage and aid

and abet its customers' and users' direct infringement of the '655 Patent, including to make and use the claimed systems in an infringing manner as described above.

98.    For example, Tile instructs its customers and users to make and use the claimed systems and to perform the claimed methods "to help find your things near or far."



(https://www.thetileapp.com/en-us/how-it-works)

99.    Tile further encourages customers and users to purchase and activate multiple Tile Personal Trackers and thereby to make and use a system comprising a plurality of Tile Personal Trackers.



(https://www.thetileapp.com/en-us/products#combo-packs)

100.    Tile also encourages customers and users to attach Tile Personal Trackers to items they wish to monitor and thereby to make and use a system wherein each of the plurality of Tile Personal Trackers is associated with a monitored item.  As explained above, association with a monitored item is a necessary step in the Tile personal tracker and Tile App setup process.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.



101.    Tile encourages and instructs users to download the Tile App their devices.

## How to use Tile's Bluetooth Location Tracking Device.

Tile is a tiny Bluetooth tracker and easy-to-use app that finds everyday items in seconds. After you have purchased your Tile, download the app to your Apple iOS or Android device, and then simply pair your Tile to your device. Once your device is paired use your app to find your items quickly. Just listen for the ring.

(https://www.thetileapp.com/en-us/location-tracking-device)

102.    Moreover, Tile instructs users how to associate their Personal Devices with Tile Personal Trackers and thereby to make and use a system comprising a plurality of wireless communication terminals.

Congratulations on successfully setting up your Tile account - it's time to add your first Tile. Don't worry, it's easy!

1. Tap the "+" in the middle of your screen underneath, "Add a Tile".
2. You'll see a list of categories of different Tile and Partner products that you can add!
3. Select which Tile or partner product you are adding
4. Firmly press the "Tile" button or "e" and listen for that catchy tune! (Not working? Put some elbow grease in it!)
5. Hold the Tile close to your device ... and there you go! Your Tile is officially activated and ready to be attached to whatever you don't want to lose!
6. Change the name of your Tile by selecting which item you're going to attach it to (or learn how to change the name to something all your own by clicking here!)
7. Test your new Tile by pressing the green "Find" button. Your Tile will ring to show you it's been added successfully!

(https://support.thetileapp.com/hc/en-us/articles/215238618-How-do-I-Add-a-Tile-)

McDermott Will & Emery LLP
Attorneys At Law
Washington, D.C.

103.     In addition, Tile encourages users to sign up for Tile Premium service and to set up "Smart Alerts."  With a Smart Alert, a user can identify a physical address as a proximity boundary for Tile Personal Trackers.  When the user leaves the proximity boundary with her phone/tablet but without the associated Tile personal tracker, an alert is generated.



(https://www.thetileapp.com/en-us/get-premium;
https://support.thetileapp.com/hc/en-us/articles/360009109234-What-is-Smart-Alerts-)



104.     Further, Tile instructs users how to configure multiple phones/tablets to be associated with any particular Tile personal tracker.  https://support.thetileapp.com/hc/en-us/articles/203953853-Can-I-use-my-Tile-with-more-than-one-device-.

105.     Tile also instructs users how to "share" their Tile Personal Trackers with other users' phones/tablets.

McDermott Will & Emery LLP
Attorneys at Law
Washington, D.C.

1
2
3

> 1. Tap on the ellipsis (three dots) on the Tile you want to share
> 2. Click "Share Tile" on the menu that pops up
> 3. Type in the email address of the person you want to invite to share your Tile and click "Share" in the upper-righthand corner
> 4. A small "Shared" icon will appear on the Tile card, indicating that it's been shared!
>
> The person you've invited to share your Tile with will automatically have the same access to it as you do!

4      (https://support.thetileapp.com/hc/en-us/articles/205332837-Sharing-a-Tile)

5      106.    Tile also provides a "Care Team" that provides Tile's customers and users with

6  support with their Tile Personal Trackers and App.  Upon information and belief, the Care Team

7  encourages and/or instructs users and customers to set up and use the Tile devices in an infringing

8  manner consistent with the instructions highlighted above.

9      107.    Tile has engaged in the above instructions to its users and customers even after

10  knowing of the '655 Patent.

11      108.    Cellwitch will be substantially and irreparably harmed if Tile is not enjoined from

12  infringing the '655 Patent.

13      109.    Cellwitch has been and continues to be injured and damaged monetarily and

14  otherwise by Tile's indirect infringement of the '655 Patent in violation of 35 U.S.C. § 271(b).  Tile

15  is therefore liable to Cellwitch for the damages suffered by Cellwitch.

16      110.    By this action, Cellwitch seeks recovery of its damages pursuant to 35 U.S.C. § 284,

17  including, without limitation, lost profits and a reasonable royalty.

18      111.    Tile's continuing acts of induced infringement are willful, entitling Cellwitch to

19  increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting

20  this action under 35 U.S.C. § 285.

21

22                          **THIRD CAUSE OF ACTION**
23          **(Contributory Infringement of the '655 Patent under 35 U.S.C. § 271(c))**

24      112.    Cellwitch incorporates the foregoing allegations as if fully realleged and restated

25  herein.

26      113.    Tile has indirectly infringed and is still indirectly infringing the '655 Patent in

27  violation of 35 U.S.C. § 271(c) by contributing to infringement of the '655 Patent.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

AMENDED COMPLAINT
CASE NO. C-19-1315 JSW

114.    Tile, with knowledge that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent, has contributed and continues to contribute to customers' and users' direct infringement of the '655 Patent, by selling and/or offering for sale Tile Personal Trackers, the Tile App, and the Tile Premium service.

115.    Upon information and belief, each of the Tile Personal Trackers, the Tile App and the Tile Premium service, and various severable components and functionalities thereof, constitutes a material part of the claimed inventions of the '655 patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

116.    Tile has knowledge that each of the Tile Personal Trackers, the Tile App and the Tile Premium service, and various severable components and functionalities thereof, is especially made or especially adapted for use that constitutes infringement of the '655 Patent as, for example, in the manner described more fully above.

117.    As detailed above, Tile has had active and constructive knowledge of the '655 Patent and its related patent applications since at least as early as 2014.  Accordingly, Tile has known or should have known that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent since no later than October 28, 2014, the date on which the '655 Patent issued.  At minimum, Tile will have actual notice that relevant configurations of the Tile System satisfy one or more claims of the '655 Patent at least as of the filing and/or service of this Complaint.

118.    Cellwitch will be substantially and irreparably harmed if Tile is not enjoined from infringing the '655 Patent.

119.    Cellwitch has been and continues to be injured and damaged monetarily and otherwise by Tile's contributory infringement of the '655 Patent in violation of 35 U.S.C. § 271(c). Tile is therefore liable to Cellwitch for the damages suffered by Cellwitch.

120.    By this action, Cellwitch seeks recovery of its damages pursuant to 35 U.S.C. § 284, including, without limitation, lost profits and a reasonable royalty.

121.    Tile's continuing acts of contributory infringement are willful, entitling Cellwitch to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

**PRAYER FOR RELIEF**

WHEREFORE, Cellwitch prays for judgment against Defendant, and respectfully requests the following relief:

1.     A judgment that Defendant has directly infringed and/or is directly infringing one or more claims of the '655 Patent;

2.     A judgment that Defendant has indirectly infringed and/or is indirectly infringing one or more claims of the '655 Patent;

3.     Entry of a permanent injunction enjoining Defendant, its officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from further direct and/or indirect infringement of the '655 Patent;

4.     An award of damages or other monetary relief, including but not limited to, costs and pre-and post-judgment interest, to Cellwitch;

5.     A declaration that Defendant's infringement is willful and deliberate and an increase to the award of damages of three times the amount found or assessed by the Court, pursuant to 35 U.S.C. § 284; and

6.     Such other and further relief as the Court deems just and appropriate, including but not limited to, a determination that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award of attorneys' fees and costs to Cellwitch in this action.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP


Dated:   May 16, 2019          By:          /s/ *Nicole M. Jantzi*
                                        Nicole M. Jantzi

                                        *Attorneys for Plaintiff Cellwitch Inc.*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

- 34 -

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff respectfully requests a jury trial on all issues triable thereby.

3

MCDERMOTT WILL & EMERY LLP

4

5

Dated:    May 16, 2019          By:        /s/ *Nicole M. Jantzi*

Nicole M. Jantzi

6

*Attorneys for Plaintiff Cellwitch Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT
CASE NO. C-19-1315 JSW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.