Sarah J. Guske (CA Bar No. 232467)
Email: sarah.guske@bakerbotts.com
**BAKER BOTTS L.L.P**
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6200
Fax: (415) 291-6300

Lauren J. Dreyer (*Pro Hac Vice*)
**BAKER BOTTS L.L.P.**
Email: lauren.dreyer@bakerbotts.com
700 K Street, N.W.
Washington, DC 20001
Telephone: (202) 639-7700
Fax: (202) 639-7890

John F. Gaustad (CA Bar No. 279893)
Email: john.gaustad@bakerbotts.com
**BAKER BOTTS L.L.P**
1001 Page Mill Rd., Bldg. 1, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Fax: (650) 739-7600

*Attorneys for Defendant Tile, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CELLWITCH INC.,<br><br>Plaintiff,<br><br>v.<br><br>TILE, INC.,<br><br>Defendant. | Case No.  4:19-CV-01315-JSW<br><br>**DEFENDANT TILE, INC.'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S NOV. 21, 2019 ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 57) AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date: September 23, 2022<br>Time: 9:00 a.m.<br>Courtroom: 5<br>Judge: Jeffrey S. White |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ............................................ 3

III.   STATEMENT OF RELEVANT FACTS ...................................................... 3

     A.    Tile's Motion to Dismiss and Plaintiff's Opposition Thereto ................. 3

     B.    The Court's November 21, 2019 Order Denying Tile's Motion to Dismiss .......... 4

     C.    The Patent Trial and Appeal Board's Final Written Decision and the Federal Circuit's Affirmance Thereof ................................................... 5

IV.   LEGAL STANDARDS ................................................................................... 5

     A.    Issue Preclusion ........................................................................................ 5

     B.    Pleading Standards .................................................................................... 6

     C.    Judicial Estoppel ...................................................................................... 6

V.    ARGUMENT ................................................................................................... 7

     A.    Issue Preclusion Bars Plaintiff from Attempting to Relitigate the Non-Inventiveness of the Buddy Limitation .................................................. 7

         1.    Issue Preclusion Applies ...................................................... 7

         2.    Judicial Estoppel Bars Plaintiff from Arguing that the Obviousness and Non-Inventiveness of the Buddy Limitation Are Different Issues .......... 9

     B.    Regardless of Whether Issue Preclusion Applies, the Amended Complaint's Factual Allegations Regarding a Purported Inventive Concept Are Implausible and Conclusory ........................................................... 10

     C.    The Above Arguments Also Apply to Plaintiff's Factual Allegations Regarding the InfoWorld Publication, But the InfoWorld Publication Did Not Even Disclose or Describe the Buddy Limitation ........................... 12

     D.    The PTAB's Final Written Decision and the Federal Circuit's Judgment and Mandate Are Subject to Judicial Notice Can Be Considered .......... 13

     E.    The Court Has Authority to Reconsider the Rule 12 Motion ................. 13

     F.    The Amended Complaint Should Be Dismissed with Prejudice ............ 14

VI.   CONCLUSION ............................................................................................. 15

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3

CASES

4

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980) ................................................................. 2, 14

5

6

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ................................................................................. 1–2

7

8

*Anderson v. Intel Corp. Inv. Policy Comm.*,
   __ F. Supp. 3d __, 2022 WL 74002 (N.D. Cal. Jan. 8, 2022) ...................... 13

9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 6, 12

10

11

*Baughman v. Walt Disney World Co.*,
   685 F.3d 1131 (9th Cir. 2012) ............................................................. 2, 6–7

12

13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 6, 12

14

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ........................................................................ 6

15

16

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) ....................................................... 5, 12, 13

17

18

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) ..................................................................... 14

19

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   760 F. App'x 1013 (Fed. Cir. 2019) ............................................................. 13

20

21

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ................................................................... 15

22

23

*Dann v. Johnston*,
   425 U.S. 219 (1976) ...................................................................................... 7

24

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ...................................................................................... 7

25

26

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) .................................................... 11–12, 13

27

*Dworkin v. Hustler Magazine Inc.*,
   867 F.2d 1188 (9th Cir. 1989) ....................................................................... 6

28

*Gen. Elec. Co. v. Raytheon Techs. Corp.*,
  983 F.3d 1334 (Fed. Cir. 2020) .................................................................................................8

*Ghalehtak v. Fay Servicing, LLC*,
  304 F. Supp. 3d 877 (N.D. Cal. 2018) ......................................................................................6

*Graham v. John Deere Co. of Kan. City*,
  383 U.S. 1, 17–18 (1966) ......................................................................................................8–9

*Howard v. City of Coos Bay*,
  871 F.3d 1032 (9th Cir. 2017) ..................................................................................................8

*In re Gilead Sciences Securities Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...........................................................................................6, 11

*Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*,
  869 F.3d 1336 (Fed. Cir. 2017) ...........................................................................................8–9

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1331 (Fed. Cir. 2017) ..............................................................................................15

*IV Solutions, Inc. v. Empire Healthchoice Assurance, Inc.*,
  No. 20-56132, 2021 WL 5492974 (9th Cir. Nov. 23, 2021) (mem.) ........................................15

*Jaeger v. Howmedica Osteonics Corp.*,
  No. 15-cv-00164-HSG, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016) ......................................14

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ..............................................................................................................5, 7

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  No. C-11-01036 JSW, 2011 WL 13152817 (N.D. Cal. July 14, 2011) ...............................2, 14

*Lu v. Stanford Univ.*,
  No. 17-cv-07034-VC, 2018 WL 11268585 (N.D. Cal. Mar. 26, 2018) ..............................10, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ......................................................................................................... *passim*

*Mir v. Little Co. of Mary Hosp.*,
  844 F.2d 646 (9th Cir. 1988) ..................................................................................................13

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ......................................................................................................5, 6–7, 10

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
  379 F. Supp. 3d 857 (N.D. Cal. 2019) ....................................................................................15

*Oyeniran v. Holder*,
  672 F.3d 800 (9th Cir. 2012) ..............................................................................................5–6, 8

*Paatalo v. JPMorgan Chase Bank, N.A.*,
  684 F. App'x 601 (9th Cir. 2017)........................................................................5–6, 8

*Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*,
  924 F.3d 1243 (Fed. Cir. 2019)..................................................................................8

*Parker v. Flook*,
  437 U.S. 584 (1978)...................................................................................................7

*Patera v. Citibank, N.A.*,
  698 F. App'x 468 (9th Cir. 2017)............................................................................13

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990)...................................................................................15

*Sakraida v. Ag Pro, Inc.*,
  425 U.S. 273 (1976)...................................................................................................7

*Sec. & Exch. Comm'n v. Stein*,
  906 F.3d 823 (9th Cir. 2018).....................................................................................8

*Skillz Platform Inc. v. AviaGames Inc.*,
  No. 21-cv-02436-BLF, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022).........10–11, 12

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001).................................................................................6, 11

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)...................................................................................6

*Sussman v. Provident Life & Acc. Ins.*,
  326 F. App'x 421 (9th Cir. 2009)..............................................................................6

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ..................................................................................................5

*United States v. Black*,
  482 F.3d 1035 (9th Cir. 2007).................................................................................13

*Wagner v. Prof'l Eng'rs in Cal. Gov't*,
  354 F.3d 1036 (9th Cir. 2004)...................................................................................6

*Wenke v. Forest Labs., Inc.*,
  796 F. App'x 383 (9th Cir. 2020)..............................................................................9

*Wireless Protocol Innovations, Inc. v. TCT Mobile, Inc.*,
  771 F. App'x 1012 (Fed. Cir. 2019)...........................................................................8

*X One, Inc. v. Uber Techs., Inc.*,
  239 F. Supp. 3d 1174 (N.D. Cal. 2017) ..................................................................15

**STATUTES**

35 U.S.C. § 101 ................................................................................................................2, 3

35 U.S.C. § 103 ............................................................................................................2, 3, 7


**RULES**

Civil L.R. 7-9 ...................................................................................................................1, 15

Federal Rule of Civil Procedure 12 ..................................................................... *passim*

Federal Rule of Civil Procedure 54 ...........................................................................1

Federal Rule of Evidence 201 ....................................................................................13


**OTHER AUTHORITIES**

Friedenthal & Miller, *Civil Procedure* § 14.10 (5th ed. 2015) ........................................8

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Civil L.R. 7-9, the Court's Order Granting Defendant Tile, Inc.'s Motion for Leave to File a Motion for Reconsideration of the Court's Nov. 21, 2019 Order Denying Defendant's Motion to Dismiss (Dkt. 57) and Request for Judicial Notice (Dkt. 111), and Rules[1] 12(b)(6), 12(c), and 54(b), Defendant Tile, Inc. ("Tile") moves the Court for reconsideration of the Court's January 21, 2019 Order Denying Defendant's Motion to Dismiss (Dkt. 57). This motion is based on this Notice of Motion, the attached memorandum of points and authorities in support thereof, the pleadings and documents on file in this case, and such other evidence and argument as may be presented at any hearing on this motion.

In deciding this motion, Tile respectfully requests that the Court take judicial notice of the PTAB's Final Written Decision (Dkt. 103-2), the Federal Circuit's Judgment and Mandate (Dkt. 103-3 and -4), and the list of documents that currently comprise the prosecution history of Plaintiff's asserted patent, U.S. Patent No. 8,872,655 (Dkt. 103-5).

## STATEMENT OF RELIEF REQUESTED

Tile respectfully requests that the Court reconsider its November 21, 2019 Order Denying Defendant's Motion to Dismiss (Dkt. 57) and grant Tile's motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) or 12(c) with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The single fact issue that prevented the Court from finding the asserted patent claims ineligible has been resolved against Plaintiff. In Tile's original Rule 12 motion, the Court already concluded that Plaintiff's asserted patent claims are directed to an abstract idea under *Alice*[2] step one. Dkt. 57 at 4:21–9:22. Despite that finding, the Court concluded that it "must accept" Plaintiff's factual allegation that the independent claims' use of "a network of personal wireless communication terminals to monitor and notify a particular user to when an item was no longer

---

[1] All references to "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

[2] *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

within a set range of the user"—herein after referred to as the "Buddy Limitation"[3]—"imparted patentability over the existing prior art" (Dkt. 38 at 15:4–5) and was therefore inventive under *Alice* step two. Dkt. 57 at 11:18–12:7. The Federal Circuit, however, has recently affirmed a finding by the Patent Trial and Appeal Board ("PTAB") that the Buddy Limitation was obvious in view of the prior art. *See* Dkt. 103-2 at 37–49; Dkt. 103-3; Dkt. 103-4. This finding both (1) bars Plaintiff's allegation that the Buddy Limitation was inventive under issue preclusion and (2) renders this allegation implausible, conclusory, and legally erroneous. In either case, Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6). And, because any further amendment would be futile, Plaintiff's Amended Complaint should be dismissed with prejudice.

Plaintiff has thus far raised two counterarguments to the present motion. Both of these arguments—one procedural and one substantive—fail as a matter of law.

As to procedure, Plaintiff has argued that the Court cannot now grant relief under Rule 12(b)(6) because Tile already "filed an answer[.]" Dkt. 106 at 1:16–20 (citing Dkt. 59). This argument ignores that Tile timely filed its motion. Regardless, the Court has discretion to convert Tile's motion to a Rule 12(c) motion now that the pleadings are closed. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980); *see also Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C-11-01036 JSW, 2011 WL 13152817, at *1 n.1 (N.D. Cal. July 14, 2011) (White, J.) (applying *Aldabe*).

As to substance, Plaintiff has argued that the concepts already found obvious by the PTAB under Section[4] 103 can somehow remain inventive concepts under Section 101. *See* Dkt. 109, § IV.B. This argument is contrary to common sense and ignores the reality that analyses under Sections 101 and 103 "sometimes overlap" (*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 90 (2012))—as they do here. Perhaps more importantly, however, because Plaintiff successfully argued in opposing Tile's motion to dismiss that the Buddy Limitation was inventive due to the patent examiner finding it patentable *over the prior art* (*see* Dkt. 38 at 14:1–14 & 14:26–51; Dkt. 57 at 11:15–26), Plaintiff is judicially estopped from even raising this argument. *E.g.*, *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133–34 (9th Cir. 2012) (citations omitted).

---

[3] The PTAB referred to the claim limitation encompassing the alleged inventive concept as the Buddy Limitation. *See* Ex. A at 37.

[4] All references to "Sections" are to Title 35 of the United States Code, unless otherwise noted.

And regardless, given that the Amended Complaint's only specific factual allegations regarding the alleged inventive concept are now contradicted by facts subject to judicial notice (the PTAB's findings in its affirmed decision), the Amended Complaint is deficient as a matter of law.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Whether, on reconsideration of its prior order (*see* Dkt. 57) and in view of the PTAB's finding that the Buddy Limitation is not patentable in view of the prior art (*see* Dkt. 103-2 at 37–49 & 51), to dismiss Plaintiff's Amended Complaint.

## III.   STATEMENT OF RELEVANT FACTS

### A.   Tile's Motion to Dismiss and Plaintiff's Opposition Thereto

On May 16, 2019, Plaintiff Cellwitch Inc. ("Plaintiff") filed an Amended Complaint, alleging that Tile infringed U.S. Patent No. 8,872,655 ("the '655 Patent"). *See* Dkt. 32, ¶¶ 69–121. Tile thereafter moved to dismiss because the '655 Patent's claims are invalid under 35 U.S.C. § 101. Dkt. 36. Consistent with the Amended Complaint, which alleged that claim 1 of the '655 Patent was "exemplary" (Dkt. 32, ¶ 72), Tile argued that independent claim 1, along with similar independent Claim 23, were representative of all claims. *See* Dkt. 36 at 1 n.1, 3:21–4:5 & n.3.

Plaintiff filed an opposition on June 13, 2019. *See* Dkt. 38. Plaintiff argued that, because during prosecution the patent examiner found that the Buddy Limitation "*imparted patentability over the existing prior art*," the Buddy Limitation was an inventive concept for § 101 purposes:

> *. . . The "innovative feature" described in the last paragraph above relates to the claimed buddy and group find features, which Tile concedes the Examiner found to distinguish the '655 Patent over the prior art.* See ECF No. 31-2 at 2. Specifically, the Examiner confirmed that "patentability resides in 'wherein at least one buddy wireless communication terminal of the plurality of wireless communication terminals is further configured to monitor the proximity of at least one wireless device of the plurality of wireless devices associated with one of the other wireless communication terminals and to generate an alert when the proximity of at least one of the wireless devices associated with one of the other wireless communication terminals from the buddy wireless communication terminal meets or exceeds a proximity threshold to alert the user of the buddy wireless communication terminal to the met or exceeded proximity threshold', in combination with the other limitations of the claim." ECF No. 32 ¶ 38. *Thus, there is confirmation from . . . the United States Patent Office that the claimed combination of elements of the '655 Patent "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"* . . . .

*Id.* at 14:1–14 (emphasis added and citations omitted).

> *Here, as explained in the Amended Complaint and above, there are factual allegations demonstrating that the claims of the '655 Patent are directed to substantially more than a patent upon an ineligible concept itself.* Indeed, the facts available to the Court show that the combination of elements claimed were not conventional or routine in the industry at the time. See, e.g., ECF No. 32 ¶ 17-18. *For example, . . . the Examiner expressly found during prosecution that the claimed combination imparted patentability over the existing prior art.* ECF No. 32 ¶ 38. . . . These facts, which must be taken as true, directly contradict the unsupported attorney argument presented by Tile in its motion as to what was purportedly conventional and routine. . . .

*Id.* at 14:26–15:11 (emphasis added and citations omitted). Plaintiff also argued that an InfoWorld publication had described the Buddy Limitation as an "innovative feature[.]"*See id.* at 13:11–14:3. Plaintiff did not dispute that Claims 1 and 23 were representative. *See generally* Dkt. 38.

### B.     The Court's November 21, 2019 Order Denying Tile's Motion to Dismiss

The Court issued an order on November 21, 2019 denying Tile's motion without prejudice. Dkt. 57. Applying the two-step *Mayo-Alice* analysis, the Court first found that the claims of the '655 Patent are directed to an abstract idea. *Id.* at 4:21–9:22. In doing so, the Court treated claim 1 "as representative" (*id.* at 6:16–19), consistent with the fact that Plaintiff both "treat[ed] claim one as 'exemplary' in its complaint[]" (*id.* at 6:16–19 n.1 (citing Dkt. 32, ¶ 72)) and did not rebut Tile's argument that Claims 1 and 23 are representative of all claims.

Applying the second step, however, the Court found that "Plaintiff ha[d] adequately alleged that it ordered the components recited in claim one in a non-conventional manner[]" (*id.* at 11:25–27 (citation omitted)) based on the Buddy Limitation (emphasized below):

> . . . Plaintiff alleges, "[u]pon information and belief, at the time of the '655 Patent, there existed no solution that *used a network of personal wireless communication terminals to monitor and notify a particular user to when an item was no longer within a set range of the user.*" (Am. Compl. ¶ 30.) *To support this allegation, Plaintiff also alleges that the examiner found that patentability resided in the fourth clause of claim one.* (*Id.* ¶ 38.) Plaintiff later recites that claim in its complaint. (*Id.* ¶ 26, citing '655 Patent at 15:4-35.)

> The Court finds these allegations create enough of a factual dispute to defeat a Rule 12(b)(6) motion. Plaintiff has adequately alleged that it ordered the components recited in claim one in a non-conventional manner. . . . For example, Plaintiff alleges that claimed invention represents an improvement over the prior art because it offered a solution "that used a network of personal wireless communication terminals to monitor and notify a particular user to when an item was no longer within a set range of the user." (Am. Compl. ¶ 30.) The allegations in the complaint indicate that Plaintiff's patent claimed a process that "address[ed] the moment of loss itself," and this process was not well-known, routine, conventional at the time of issuance of the '655 Patent. (*See id.* at ¶ 32.) At this procedural posture, the Court must accept these allegations as true and construe the facts alleged in favor of the non-moving party. . . .

*Id.* at 11:18–12:7 (citations omitted and emphasis added). The Court relied upon Plaintiff's argument that—because the patent examiner found that the Buddy Limitation imparted patentability over the prior art—the Amended Complaint contained non-conclusory factual allegations that the asserted claims were directed to an inventive concept. *See id.* at 11:18–24. The Court noted that it "must accept [Plaintiff's] allegations as true" and construe the facts alleged in its favor. *Id.* at 12:5–7 (citing *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–18 (Fed. Cir. 2019)).

### C.    The Patent Trial and Appeal Board's Final Written Decision and the Federal Circuit's Affirmance Thereof

Tile thereafter filed with the PTAB a petition for *inter partes* review of the '655 Patent. Dkt. 61 at 1:24–27. The PTAB issued a Final Written Decision on May 13, 2021 (Dkt. 103-2 at 1) finding that claims 1–3, 10–15, 22, and 23 of the '655 Patent were unpatentable (*id.* at 86).[5] The PTAB specifically found that the Buddy Limitation was obvious in view of the prior art. *Id.* at 37–49. Specifically, the PTAB recognized that the Buddy Limitation was nothing more than a simple arrangement of "'old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement[.]" *Id.* at 51 (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) (internal quotation marks omitted)). As part of its analysis, the PTAB also found that the InfoWorld publication did not "disclose[] or describe[]" the Buddy Limitation. Dkt. 103-2 at 69; *see also id.* at 56–66.

The Federal Circuit thereafter affirmed the PTAB and issued its mandate (Dkt. 103-3 & -4).

## IV.    LEGAL STANDARDS

### A.    Issue Preclusion

Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). It "applies if '(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated in decided in the prior proceedings; (3) there

---

[5] The PTAB also concluded that Tile had not "demonstrated . . . that claims 4–9 and 16–21 are unpatentable[.]" *Id.* at 86. Those claims remain at issue but are patent ineligible for the reasons set forth in this Motion and given the unchallenged assertion that claim 1 is representative for § 101.

was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide on the merits.'" *Paatalo v. JPMorgan Chase Bank, N.A.*, 684 F. App'x 601, 602 (9th Cir. 2017) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)). Resolving allegations on the pleadings is proper when they depend on an issue of fact already resolved against the plaintiff. *See, e.g.*, *Paatalo*, 684 F. App'x at 602–03; *Sussman v. Provident Life & Acc. Ins.*, 326 F. App'x 421, 422 (9th Cir. 2009); *Ghalehtak v. Fay Servicing, LLC*, 304 F. Supp. 3d 877, 887–88 (N.D. Cal. 2018).

### B.   Pleading Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such "allegations of underlying facts" must (1) "give fair notice and [] enable the opposing party to defend itself effectively" and (2) "plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "'The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice'" or "'are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)). A Rule 12(b)(6) motion is "'functionally identical'" to a motion for judgment on the pleadings under Rule 12(c). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)) (additional citations omitted).

### C.   Judicial Estoppel

"Judicial estoppel prevents a party from changing its 'position in a legal proceeding[]'" (*Baughman*, 685 F.3d at 1133 (emphasis omitted) (quoting *New Hampshire*, 532 U.S. at 749)), and the doctrine applies to both legal and factual assertions (*id.* (citing *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004)). In applying judicial estoppel, courts consider three factors: whether a party (1) is seeking to assert a position is "clearly inconsistent" with the earlier position, (2) "succeed[ed]" in persuading [the] court to accept its earlier position," and (3) will

"derive an unfair advantage or impose an unfair detriment on the opposing party[.]" *Id.* (internal quotation marks omitted) (quoting *New Hampshire*, 532 U.S. at 750–51).

## V.    ARGUMENT

### A.    Issue Preclusion Bars Plaintiff from Attempting to Relitigate the Non-Inventiveness of the Buddy Limitation

The PTAB found that the Buddy Limitation was obvious in view of the prior art, and issue preclusion bars Plaintiff from attempting to relitigate the Buddy Limitation's non-inventiveness. Further, because Plaintiff successfully argued that the patent examiner's erroneous finding that the Buddy Limitation was patentable over the prior art demonstrated the *existence* of an inventive concept, Plaintiff is judicially estopped from taking the contrary position that the PTAB's correct finding overruling the patent examiner conclusively established the *absence* of an inventive concept.

#### 1.    Issue Preclusion Applies

The only outstanding alleged factual issue underlying Tile's motion to dismiss—whether the Buddy Limitation was an inventive concept (*see* Dkt. 57 at 11:18–12:7)—is identical to the issue that the PTAB already decided against Plaintiff. In an affirmed, final decision, the PTAB found that the Buddy Limitation was obvious in view of the prior art. Dkt. 103-2 at 37–49. The PTAB specifically found that the Buddy Limitation was taught by the prior art (including "generating an alert when a proximity threshold . . . is met or exceeded" (*id.* at 42; *see also id.* at 39–49)) and that it was simply an "'arrange[ment of] old elements with each performing the same function it had been known to perform and yield[ed] no more than one would expect from such an arrangement[]'" (*id.* at 51 (quoting *KSR Int'l Co.*, 550 U.S. at 406); *see also id.* at 49–55). The Buddy Limitation is therefore not inventive. *Mayo*, 566 U.S. at 81 (recognizing that a concept was inventive because it was not "in context *obvious*, already in use, or purely conventional" (emphasis added) (discussing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981))); *see also id.* at 79 ("Purely 'conventional or *obvious*' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." (emphasis added) (quoting *Parker v. Flook*, 437 U.S. 584, 590 (1978)) (additional citation omitted)); *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 279 (1976) (noting that by codifying a non-obviousness requirement in Section 103, Congress was incorporating into statute the Constitution's requirement that there "be some 'invention' to be

1    entitled to patent protection" (quoting *Dann v. Johnston*, 425 U.S. 219, 225 (1976)).

2        The PTAB findings meet all of the requirements for issue preclusion. *See, e.g.*, *Paatalo*, 684

3    F. App'x at 602 (quoting *Oyeniran*, 672 F.3d at 806). Because the PTAB explicitly found that the

4    Buddy Limitation was an arrangement of known elements performing known functions to

5    accomplish known results and was obvious in view of the prior art (Dkt. 103-2 at 37–49 & 51), and

6    because the Federal Circuit affirmed (Dkt. 103-3) and has issued its mandate (Dkt. 103-4), this issue

7    was actually decided and the Plaintiff has had a full opportunity to litigate it. *E.g.*, *Papst Licensing*

8    *GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1251–52 (Fed. Cir. 2019) (applying

9    issue preclusion to PTAB final written decisions in *inter partes* review proceedings). Finally, the

10   PTAB's finding was necessary. To find that the claims were obvious, the PTAB found that the prior

11   art disclosed "every element" of those claims (*Wireless Protocol Innovations, Inc. v. TCT Mobile,*

12   *Inc.*, 771 F. App'x 1012, 1013 (Fed. Cir. 2019)) and that the claim was "obvious[] . . . as a whole"

13   (*Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1351–52 (Fed. Cir. 2020)).

14       In its opposition to Tile's motion to maintain the stay, Plaintiff asserted that the inventive

15   concept inquiry is a different issue from obviousness (*see* Dkt. 109, § IV.B), but this argument is

16   foreclosed by the Supreme Court's *Mayo* decision. *See* 566 U.S. at 79 & 81. Regardless, the Ninth

17   Circuit often considers four factors in deciding whether "issues are identical" for issue preclusion—

18   all of which are met for § 101 in this case: "(1) substantial overlap of evidence or arguments,

19   (2) application of the same rule of law, (3) overlap in pretrial preparation, and (4) relatedness of the

20   claims." *Wenke v. Forest Labs., Inc.*, 796 F. App'x 383, 384 (9th Cir. 2020) (citations omitted).

21   Further, the identical-issue assessment varies depending on the specific facts. *Sec. & Exch. Comm'n*

22   *v. Stein*, 906 F.3d 823, 829 (9th Cir. 2018) (quoting *Howard v. City of Coos Bay*, 871 F.3d 1032,

23   1041 (9th Cir. 2017) and citing Friedenthal & Miller, *Civil Procedure* § 14.10 (5th ed. 2015)).

24       To find the '655 Patent's claims (and the Buddy Limitation) obvious in view of the prior art,

25   the PTAB made factual determinations including "'the scope and content of the prior art, differences

26   between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, [] any

27   objective indicia of non-obviousness[,]'" and "whether the relevant skilled artisan had a motivation

28   to combine pieces of prior art in the way eventually claimed . . . ." *Intercontinental Great Brands*

1    *LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1343 (Fed. Cir. 2017) (quoting *Graham v. John Deere*

2    *Co. of Kan. City*, 383 U.S. 1, 17–18 (1966)). Given that these factual inquiries all focused on the

3    state of the art and the knowledge and motivations of those skilled in the art, which are all relevant

4    to whether a concept is "inventive"—particularly in light of Plaintiff's inventiveness assertions in

5    this case—the first factor (substantial overlap of evidence or arguments) is satisfied here. The third

6    factor (overlap in pretrial preparation) is satisfied because "[t]he pretrial preparation and discovery

7    from the [PTAB] proceeding should reasonably have included evidence" (*Wenke*, 796 F. App'x at

8    385) of whether the Buddy Limitation was inventive, in view of the requisite factual inquires noted

9    above. The fourth factor (relatedness of the claims) is similarly satisfied because "the claims in the

10   two proceedings . . . share factual predicates[]" (*id.*), including the factual inquiries noted above and

11   the fact that the PTAB was analyzing the same limitation of the same claims of the same patent that

12   is at issue here.

13         That leaves only the second factor (application of the same rule of law). The Supreme Court

14   recognized in *Mayo* that an obvious concept is not an inventive concept. *See* 566 U.S. at 79 & 81.

15   Even if "different rules of law" are at issue, issue preclusion still applies so long as "the underlying

16   issues are the same and the conclusions from the [first action] undercut [a party's] theories in the

17   [second] action." *Wenke*, 796 F. App'x at 384. The PTAB's finding that the Buddy Limitation is an

18   obvious "'arrange[ment of] old elements with each performing the same function it had been known

19   to perform and yield[ed] no more than one would expect from such an arrangement[]'" (Dkt. 103-2

20   at 51; *see also id.* at 37–55) does nothing but undercut Plaintiff's allegations that the Buddy

21   Limitation is inventive—*allegations that were based on alleged distinctions over prior art*.

22             2.   <u>Judicial Estoppel Bars Plaintiff from Arguing that the Obviousness and Non-</u>
23                 <u>Inventiveness of the Buddy Limitation Are Different Issues</u>

      Moreover, judicial estoppel bars Plaintiff from now arguing that the Buddy Limitation's

24   obviousness and non-inventiveness are different issues. Plaintiff argued that these issues were the

25   *same* when it first opposed Tile's motion to dismiss. *See* Dkt. 38 at 14:1–14, 14:26–15:11. For

26   example, Plaintiff argued that the Buddy Limitation was inventive because the patent examiner had

27   "expressly found during prosecution that the claimed combination imparted patentability over the

28   existing prior art" (*id.* at 15:4–5)—*i.e.*, that the prior art did not anticipate or render obvious the

Buddy Limitation. According to Plaintiff, this finding constituted confirmation "from . . . the United States Patent Office that the [Buddy Limitation] 'involve[s] more than the performance of '*well-understood, routine, [and] conventional activities previously known to the industry*[]'" (*id.* at 14:11–14 (internal quotation marks and citation omitted))—*i.e.*, that the patent examiner's finding that the prior art did not anticipate or render obvious the Buddy Limitation meant that the Buddy Limitation was not well-understood, routine, or conventional. Plaintiff's current position is clearly inconsistent with the position it took when it originally opposed Tile's motion to dismiss.

Not only did Plaintiff advance this argument, but it succeeded in persuading the Court to adopt it. *See* Dkt. 57 at 11:18–12:7. Specifically, the Court noted that Plaintiff had "allege[d] that the examiner found that patentability resided in the [Buddy Limitation]" and that "these allegations create[d] enough of a factual dispute to defeat a Rule 12(b)(6) motion." *Id.* at 11:21–26.

Finally, the fact that Plaintiff is talking out of both sides of its mouth on this issue will both give it an unfair advantage and impose an unfair detriment on Tile. Plaintiff succeeded in originally opposing Tile's motion only by alleging that the patent examiner's incorrect finding that the Buddy Limitation was not obvious demonstrated the existence of an inventive concept. Plaintiff's initial success forced Defendant to expend significant time and resources before the PTAB, demonstrating that the patent examiner's finding (among others) was incorrect. To allow Plaintiff to now oppose the present motion by arguing that obviousness is irrelevant to the inventive concept inquiry would enable precisely the "improper use of judicial machinery[]" that judicial estoppel is intended to prevent. *New Hampshire*, 532 U.S. at 750 (internal quotation marks and citation omitted).

**B.      Regardless of Whether Issue Preclusion Applies, the Amended Complaint's Factual Allegations Regarding a Purported Inventive Concept Are Implausible and Conclusory**

Regardless of whether issue preclusion applies, the PTAB's finding renders Plaintiff's allegations about the Buddy Limitation conclusory and implausible under Rule 12, and the complaint should be dismissed for this additional, independent reason. *See, e.g.*, *Lu v. Stanford Univ.*, No. 17-cv-07034-VC, 2018 WL 11268585 (N.D. Cal. Mar. 26, 2018) (finding that a prior judgment rendered factual assertions implausible in granting a motion to dismiss); *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-cv-02436-BLF, 2022 WL 783338, at *18 (N.D. Cal. Mar. 14, 2022)

("[The plaintiff's] allegations that the use of GPS or LPS was unconventional, innovative, or an improvement are implausible in light of the intrinsic record, which indicates that these technologies were conventional and that the [patent] claims recite using them for generic location-determining functions." (citation omitted)). In its November 21, 2019 order, the Court recognized that Plaintiff alleged that the Buddy Limitation was inventive because "the examiner found that patentability resided in the fourth clause of claim one." Dkt. 57 at 11:21–24 (citing Dkt. 32, ¶ 38). The PTAB has now found that the Buddy Limitation (the fourth clause of claim one) was obvious and ***not*** a source of patentability. Ex. A at 37–49. "'The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice" or "'are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead*, 536 F.3d at 1055 (quoting *Sprewell*, 266 F.3d at 988). The PTAB's finding that the Buddy Limitation was an obvious "'arrange[ment of] old elements with each performing the same function it had been known to perform and yield[ing] no more than one would expect from such an arrangement[]'" contradicts Plaintiff's factual allegation that the Buddy Limitation was a source of patentability, and thus somehow inventive. Dkt. 103-2 at 51. Because the PTAB's findings are subject to judicial notice (*see infra* § V.C), the Court need not—and should not—accept Plaintiff's contradictory factual allegations as true.

The present case is analogous to the Federal Circuit's recent decision in *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020). In *Dropbox*, the plaintiff argued that the combination of "data tagging and remote synchronization steps" was inventive because the asserted patent's "data structure allows data to be formatted in a way that makes data transfer reliable and efficient." *Id.* at 537 (internal quotation marks and citation omitted). The patent at issue, however, described both steps as "known in the art" (Gaustad Decl., Ex. A[6] at 3:24–29 & 34–37, 6:60–61), therefore teaching that they were "routine and conventional[]" (*Dropbox, Inc.*, 815 F. App'x at 537). The patent similarly taught that the data structure could be created by "methods known in the art[,]" which "contradict[ed] [the plaintiff's] claims that the patent t[aught] an inventive data structure[.]" *Id.* (citing Gaustad Decl., Ex. A at 3:24–29 & 34–37, 6:60–61). The Federal Circuit concluded that the remaining unsupported factual allegations could not survive a

---

[6] Exhibit A is a copy of the patent analyzed in the cited section of *Dropbox, Inc.*

motion to dismiss. *Id.* at 538. Here, the PTAB has found (and the Federal Circuit has affirmed) that the Buddy Limitation was an arrangement of elements known in the art producing expected results. Dkt. 103-2 at 37–49 & 51. Accordingly, Plaintiff's factual allegations regarding the purported inventiveness of the Buddy Limitation cannot survive Tile's motion to dismiss. *See, e.g.*, *Lu*, 2018 WL 11268585; *Skillz Platform Inc.*, 2022 WL 783338, at *18.

Absent Plaintiff's implausible and conclusory factual allegations regarding the Buddy Limitation's alleged inventiveness, all that remains in the Amended Complaint are "[t]hreadbare recitals of the elements of a cause of action[] supported by mere conclusory statements, [which] do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Dropbox, Inc.*, 815 F. App'x at 538 ("[O]nly 'plausible and specific factual allegations that *aspects of the claims* are inventive are sufficient.'" (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019))); *Skillz Platform*, 2022 WL 783338, at *18 (finding that the plaintiff's allegations regarding *Alice* step two were "conclusory or implausible" "in light of the intrinsic record"). For this independent reason, Tile respectfully requests that the Court grant Tile's requested relief.

## C.     The Above Arguments Also Apply to Plaintiff's Factual Allegations Regarding the InfoWorld Publication, But the InfoWorld Publication Did Not Even Disclose or Describe the Buddy Limitation

While not apparently germane to the Court's November 21, 2019 Order and therefore already not a barrier to a finding of ineligibility on reconsideration, Plaintiff cannot avoid judgment by shifting to the Amended Complaint's allegations regarding the InfoWorld publication. *See* Dkt. 38 at 14:28–15:4 (citing Dkt. 32, ¶¶ 17 & 18). For the same reasons discussed above, given the PTAB's finding that the Buddy Limitation was obvious (and thus not inventive or "innovative"), (1) issue preclusion bars Plaintiff from attempting to relitigate this issue, and (2) factual allegations based on the InfoWorld article are implausible and conclusory in view of the PTAB's finding.

The PTAB also found that the InfoWorld publication did not even "disclose[] or describe[]" the Buddy Limitation. Dkt. 103-2 at 69; *id.* at 56–66 (finding that the Ty application—the product described in the InfoWorld publication—did not include the Buddy Limitation). Plaintiff's expert admitted to the PTAB that the cited "'excerpt from the InfoWorld article isn't related to the buddy feature' and . . . did not 'identify any actual praise about specifically the buddy feature' in his

testimony." *Id.* at 70 (citation omitted). Plaintiff did not appeal these findings. Thus, InfoWorld has been finally adjudged to be wholly divorced from the asserted patent, and "'any allegation about inventiveness, wholly divorced from the claims or the specification' does not defeat a motion to dismiss; only 'plausible and specific factual allegations that *aspects of the claims* are inventive are sufficient.'" *Dropbox, Inc.*, 815 F. App'x at 538 (quoting *Cellspin Soft, Inc.*, 927 F.3d at 1317). And issue preclusion bars Plaintiff from challenging this additional finding: (1) the same issue was at stake in both proceedings (whether the InfoWorld publication disclosed or described the Buddy Limitation), (2) the issue was actually litigated, (3) Cellwitch had a full and fair opportunity to litigate the issue, and (4) the issue was necessary to the PTAB's decision, given that Cellwitch argued that the InfoWorld publication was evidence of secondary considerations. *See id.* at 55–72.

### D. The PTAB's Final Written Decision and the Federal Circuit's Judgment and Mandate Are Subject to Judicial Notice Can Be Considered

In its motion for leave, Tile previously requested that the Court take judicial notice of the PTAB's Final Written Decision and the Federal Circuit's judgment and mandate. Dkt. 103 at 1:8–17 & § V.B. Plaintiff did not oppose that request. *See* Dkt. 106. In an abundance of caution, Tile reraises the request here. Specifically, the Court can consider the PTAB's Final Written Decision and the Federal Circuit's Judgment and Mandate in reconsidering its prior Rule 12 decision. "Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice." *Anderson v. Intel Corp. Inv. Policy Comm.*, __ F. Supp. 3d __, 2022 WL 74002, at *6 (N.D. Cal. Jan. 8, 2022) (citing *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007)); *see also* Fed. R. Evid. 201(b). Further, "'it is proper . . . to take judicial notice of matters of public record outside the pleadings and consider them for purposes of [a] motion to dismiss.'" *Patera v. Citibank, N.A.*, 698 F. App'x 468, 469 (9th Cir. 2017) (quoting *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988)). Indeed, the PTAB's Final Written Decision is part of the '655 Patent's prosecution history (*see* Dkt. 103-5), which can be considered at the pleadings stage to resolve issues of patent eligibility under Section 101. *E.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1018 (Fed. Cir. 2019) (citations omitted).

### E. The Court Has Authority to Reconsider the Rule 12 Motion

Because Tile's motion was timely when it was filed, the Court can reconsider and grant

Tile's motion to dismiss under Rule 12(b)(6). The Federal Rules of Civil Procedure allowed Tile to file "[a] motion asserting" its 12(b)(6) defense "before pleading if a responsive pleading is allowed" (Fed. R. Civ. P. 12(b)), which is precisely what Tile did (*compare* Dkt. 36, *with* Dkt. 59).

Plaintiff argued in its opposition to Tile's motion for leave, however, that the proper procedural mechanism for resolving the present dispute is via a motion for judgment on the pleadings pursuant to Rule 12(c). Dkt. 106 at 2:16–20. Although Tile's original motion to dismiss was timely, the Court has discretion to convert Tile's 12(b)(6) motion to a 12(c) motion now that the pleadings are closed. *Aldabe*, 616 F.2d at 1093; *see also Lotes Co.*, 2011 WL 13152817, at *1 n.1 (applying *Aldabe*). If the Court is not inclined to proceed under Rule 12(b)(6), Tile respectfully requests that the Court exercise that discretion here. "There is no reason to waste the resources of the parties and the Court by dismissing the instant motion on procedural grounds, then waiting for Defendant to refile an identical motion with a different title." *Jaeger v. Howmedica Osteonics Corp.*, No. 15-cv-00164-HSG, 2016 WL 520985, at *6 (N.D. Cal. Feb. 10, 2016). "The risk of prejudice to Plaintiff[] is further decreased" given that Tile's motion to dismiss was filed under Rule 12(b)(6), and there is no risk that any trial will be delayed because no trial has been scheduled. *Id.*

### F.     The Amended Complaint Should Be Dismissed with Prejudice

Consistent with Plaintiff's own assertion that Rule 12(c) applies because the pleadings are closed, the Amended Complaint should be dismissed with prejudice. Plaintiff is not entitled to any further amendments and already amended its complaint once before (*see* Dkt. 36), in response to a motion by Tile to dismiss based on Section 101 (*see* Dkt. 30). The Amended Complaint does not allege that any inventive concepts are found in the dependent claims. *See generally* Dkt. 32. Further, Plaintiff alleged in the Amended Complaint that claim 1 was "exemplary" (*see* Dkt. 32, ¶¶ 25, 72, 74, 76, 78; *see also* Dkt. 57 6:16–19 n.1 (citing Dkt. 32, ¶ 72)) and did not challenge Tile's assertion and the Court's treatment of claim 1 as representative of all claims for purposes of § 101 (*see generally* Dkt. 38). Because the PTAB found that claim 1 was obvious in view of the prior art, it would be futile for Plaintiff to allege that any other concept found in claim 1 was inventive. "[T]here is no need to prolong the litigation by permitting further amendment" when "any amendment would be futile[.]" *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (citation omitted).

1    Additionally, Plaintiff cannot allege that any claim other than claim 1 provides an inventive

2    concept because of its allegation that claim 1 was "exemplary." Any allegation that a different claim

3    provides an inventive concept would "contradict the allegations in its prior []

4    complaint[][,]"rendering any further amendment "futile." *IV Solutions, Inc. v. Empire Healthchoice*

5    *Assurance, Inc.*, No. 20-56132, 2021 WL 5492974 (9th Cir. Nov. 23, 2021) (mem.) (quoting *Reddy*

6    *v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). And even if Plaintiff could make some

7    non-contradictory allegation based on the dependent claims, the Court may "determine which claim

8    or claims are representative if 'all the claims are substantially similar and linked to the

9    same . . . idea.'" *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 872 (N.D.

10   Cal. 2019) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776

11   F.3d 1343, 1348 (Fed. Cir. 2014)). The Court already treated claim 1 as representative in its prior

12   order (*see* Dkt. 57 at 6:16–19 & n.1), and Plaintiff did not move for reconsideration of that decision.

13   Given that Tile filed its own motion for leave to move for reconsideration nearly seven weeks ago

14   (*see* Dkt. 103), and that two weeks have passed since the Court granted Tile's motion (*see* Dkt. 111),

15   Plaintiff cannot seek reconsideration of the Court's prior order finding claim 1 representative

16   because it cannot establish "reasonable diligence." *See* Civil L.R. 7-9(b).

17   Finally, even if Plaintiff could somehow overcome these barriers, the only claims that

18   survived the PTAB's review merely describe categories of the collected data of the invalid

19   independent claims and non-specific uses of the collected data. *See* Dkt. 32-1 ('655 Patent), cls. 4–

20   9 & 16–21. None of these claims can provide an inventive concept as a matter of law. *See, e.g.*,

21   *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1331, 1341 (Fed. Cir. 2017)

22   (analyzing claims directed to "collecting, displaying, and manipulating . . . data"); *X One, Inc. v.*

23   *Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1195–96 (N.D. Cal. 2017) (analyzing "[f]unctions such as

24   requesting, receiving, and storing information over a network" to "perform a service").

25   ## VI.    CONCLUSION

26   Tile respectfully requests that the Court reconsider its November 21, 2019 Order (Dkt. 57)

27   and grant the relief requested in Tile's motion to dismiss Plaintiff's Amended Complaint, either

28   under Rule 12(b)(6) or 12(c), and dismiss Plaintiff's Amended Complaint with prejudice.

1

Dated: August 8, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BAKER BOTTS L.L.P.**

*/s/ Sarah J. Guske*
Sarah J. Guske
CA Bar No. 232467
sarah.guske@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
T: (415) 291-6200
F: (415) 291-6300

Lauren J. Dreyer (*Pro Hac Vice*)
lauren.dreyer@bakerbotts.com
700 K Street. N.W.
Washington, DC 20001
T: (202) 639-7700
F: (202) 639-7890

John F. Gaustad
CA Bar No. 279893
john.gaustad@bakerbotts.com
1001 Page Mill Rd., Bldg. 1, Suite 200
Palo Alto, CA 94304
T: (650) 739-7500
F: (650) 739-7600

*Attorneys for Defendant Tile, Inc.*