UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLWITCH INC., <br><br>                    Plaintiff, <br><br>           v. <br><br> TILE, INC., <br><br>                    Defendant. | Case No. 19-cv-01315-JSW <br><br> **ORDER RE: TENTATIVE CLAIM CONSTRUCTION RULINGS AND QUESTIONS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE CLAIM CONSTRUCTION HEARING SCHEDULED ON JANUARY 18, 2024, AT 10:00 A.M.:

The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil. Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The parties are further ORDERED to file their presentation slides no later than January 17, 2024, at 10:00 a.m. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

The parties shall each have approximately 60 minutes to present their arguments on claim construction. The Court provides its tentative constructions of the disputed terms of U.S. Patent Nos. 8,872,655 ("'655 Patent").

I.  **EVIDENTIARY OBJECTIONS**

As a preliminary matter, Tile objects that (1) Cellwitch's Exhibit B (Dkt. No. 191-2) is an incomplete copy of the '655 Patent file history and (2) Dr. Goldberg's testimony is inadmissible under FRE 702(b)–(d) and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). The Court has the following questions:

1. Regarding Tile's objection to Cellwitch's Exhibit B, does Cellwitch have any objection to the admission of Dkt. No. 186-17 as a full copy of the '655 Patent file history?

2. Regarding Tile's objection to Dr. Goldberg's testimony, what are the parties' respective best authorities on the question of how the Court should apply *Daubert* in considering whether to exclude expert testimony on claim construction, specifically?

The Court **tentatively** (1) sustains Tile's objections to Cellwitch Ex. B and admits Dkt. No. 186-17 in its stead and (2) rules that Tile's objections to Dr. Goldberg's testimony are insufficient grounds to exclude his testimony.

II. **DISPUTED CLAIMS**

A.  **"wireless communication terminal"** *('655 Patent at Claims 1, 8–9, 12, 20–21)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| "wireless enabled mobile device" | No construction necessary |

The term "wireless communication terminal" appears in claims 1, 8–9, 12, and 20–21 of the '655 Patent, and all claims which depend upon those claims. The claims recite a plurality of "*wireless communication terminals*," each being "associated with a respective user and associated with at least one respective associated wireless device".

The parties dispute whether "wireless communication terminal" must be a mobile device, or whether it may also include a "base station." Cellwitch argues that the term "wireless communication terminal" is a simple substitution for the term "mobile stations" as discussed in the '655 Patent specification, and which are distinguished from "base stations" which are not mobile.

2

Tile argues that there is no support to import the word "mobile" into the claim language, and that construing "wireless communication terminal" as a "wireless enabled mobile device" would render claims 10 and 22 of the '655 Patent superfluous, as they recite systems "wherein at least one of the plurality of wireless communication terminals is a wireless enabled mobile device." Tile further argues that Cellwitch's construction conflicts with the prosecution history, in which the applicant amended the language from "mobile station" to "wireless enabled mobile device" in response to a January 2, 2014 Rejection.

The Court has the following questions:

1. According to Tile, the "mobile station" is only one preferred embodiment. Does the patent disclose embodiments without any "mobile stations"?

2. Cellwitch cites to *Nystrom v. Trex Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005), where the Federal Circuit construed the term "board" as requiring it to be "made of wood" despite dependent claims reciting wood boards. How does Tile distinguish that case from the situation here?

3. The June 25, 2014 Notice of Allowability (Dkt. No. 186-17 at 331–34) noted that "patentability resides in [the buddy limitation]." What does Cellwitch contend is the reason for the amendment of the claim language from "mobile station" to "wireless communication terminal" in the prosecution history?

   a. What, if any, difference exists between the terms "mobile station" and "wireless communication terminal"?

4. Can a wireless enabled device be neither a "wireless enabled mobile device" nor a "base station"?

The Court **tentatively** adopts the construction: "wireless enabled mobile device."

//
//
//
//
//

3

B. **"monitor the proximity of"** *('655 Patent at Claims 1, 12)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| "keep track of whether the wireless device is within range of or a defined distance from the wireless communication terminal" | No construction necessary |

The term "monitor the proximity of" appears in claims 1 and 12 of the '655 Patent, which recite configuring a "plurality of wireless communication terminals" and "at least one buddy wireless communication terminal" to "*monitor the proximity of* at least one wireless device".

The parties dispute whether "monitor[ing]" is limited to "keep[ing] track of" or whether it also includes "detecting" or "finding". Cellwitch argues that the intrinsic evidence clearly distinguishes the act of "monitoring" from merely "detecting", and that extrinsic evidence supports the distinction between monitoring and merely finding or detecting. Tile argues that Cellwitch's argument is precluded under collateral estoppel, as the PTAB already ruled against Cellwitch's argument in the IPR.

The Court finds this dispute unclear, as it appears that both parties agree that monitoring must at least include the act of detecting. The Court has the following questions:

1. Does Cellwitch's proposed construction exclude "finding" or "detecting" from the definition of "monitor[ing] the proximity of"?
2. Tile states "that detecting *may be* part of monitoring[.]" Can "monitoring" occur without the act of "detecting" or "finding"?

The Court **tentatively** adopts the construction: "detect and keep track of whether the wireless device is within range of or a defined distance from the wireless communication terminal."

//
//
//
//
//

4

C.   **"when the proximity. . ." terms** *('655 Patent at Claims 1, 12)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construed:<br><br>"when it is determined that the wireless device is out of range of the wireless communication terminal or otherwise is estimated to be at or beyond a defined distance from the wireless communication terminal" | "[generate an alert] at a time close to the moment when at least one of the associated respective wireless devices moves outside of or beyond a proximity threshold in relation to the associated wireless communication terminal, wherein that time depends on (1) the time interval between polling messages, and (2) the length of time the terminal takes to send a polling message, receive responses from those patches within range, ascertain the identities of the patches, and check the identities of the patches that responded to the polling message against those associated with the terminal" |

The term "[w]hen the proximity of at least one of the wireless devices . . . meets or exceeds a proximity threshold" appears in claims 1 and 12 of the '655 Patent, which recite wireless communication terminals which are configured to generate an alert "[w]hen the proximity of at least one of the wireless devices . . . meets or exceeds a proximity threshold."

It is unclear where the parties' dispute lies with regards to this term. Tile argues that the term should be construed such that the time the alert is generated is not "uncoupled" from the determination of meeting or exceeding the proximity threshold. Cellwitch apparently does not dispute this, but argues that Tile's proposed construction unnecessarily imports limitations regarding a single preferred embodiment of the '655 Patent, to the exclusion of other embodiments such as the continuous transmission embodiment.

The Court finds Tile's proposed construction unsupported by the evidence, and is persuaded by Cellwitch's argument that it imports limitations from one specific embodiment. However, the Court notes that there may need to be further clarification as to the temporal nature of the claim language. The Court has the following questions:

    1.    Tile's proposed construction includes the clause "wherein that time depends on (1) the time interval between polling messages, and (2) the length of time the terminal takes to send a polling message, receive responses from those patches within range,

ascertain the identities of the patches, and check the identities of the patches that responded to the polling message against those associated with the terminal." Where in the intrinsic or extrinsic evidence is there support for this addition to the construction?

    a.    How does Tile square its proposed construction with embodiments of the '655 Patent that do not send polling messages?

2.    Does Cellwitch object to the replacement of "when" in its proposed alternative construction with "at a time close to the moment when"?

The Court **tentatively** adopts the construction: "at a time close to the moment when it is determined that the wireless device is out of range of the wireless communication terminal or otherwise is estimated to be at or beyond a defined distance from the wireless communication terminal."

**D.**    **"the collected data"** *('655 Patent at Claims 5–6, 17–18)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construed:<br><br>"the data collected and stored by the database" (claims 4-6)<br><br>"the data collected and stored by the processing system" (claims 16-18) | Claims 5-6: "the collected data recited in claim 4"<br><br>Claims 17-18: "the collected data recited in claim 16"<br><br>*Indefinite otherwise* |

The term "the collected data" appears in claims 4–6, and 16–18 of the '655 Patent, although the parties only dispute the construction of the term in claims 5–6 and 17–18. Claims 4 and 16 recite systems of claims 1 and 12, respectively, "wherein *the collected data* comprises data relating to at least one of the following: time of day the wireless device exceeds the proximity threshold, location at which the wireless device exceeds the proximity threshold, and the frequency at which the wireless device exceeds the proximity threshold." The parties agree that in claims 4 and 16, "the collected data" should be construed as "the data collected and stored by the

database of the processing system in claim 1 / claim 12." (*See* Dkt. No. 204.)

The parties dispute whether the term "the collected data" in claims 5–6 and 17–18 should be limited to the same collected data recited in claims 4 and 16. Tile argues that claims 4 and 16 narrow the scope of "the collected data" as comprising at least one of three pieces of information, and because claims 5–6 and 17–18 depend on claims 4 and 16, respectively, the recitation of "the collected data" in those claims must also comprise the same information. Cellwitch argues that the language of claim 4 and claim 16 "does not limit the types of data that may be collected and stored by the database (or processing system) . . . [and] simply requires that one or more of the three data types recited be among the data types collected and stored." (Cellwitch Br. at 14.)

The Court finds Cellwitch's position unclear. Cellwitch argues "Tile's agreement that 'the collected data' of claims 4 and 16 may include 'unrecited elements in addition to the three types' of data recited in those claims . . . should end the inquiry." (Cellwitch Reply at 8.) Tile's proposed construction seems to be consistent with this approach, while Cellwitch's proposed construction appears to read out the requirement that the collected data include one of the three types of data for claims 5–6 and 17–18. The Court has the following questions:

1. Does Cellwitch agree that "the collected data" in claims 5–6 and 17–18 must also "comprise[] data relating to at least one of the following: time of day the wireless device exceeds the proximity threshold, location at which the wireless device exceeds the proximity threshold, and the frequency at which the wireless device exceeds the proximity threshold" as recited in claims 4 and 16?

    a. If so, what objection is there to Tile's proposed construction?

    b. If not, how does Cellwitch square that position with the fact that claims 5 and 17 are dependent upon, and recite systems of claim 4 and 16, respectively?

The Court **tentatively** adopts the construction: "the collected data recited in claim 4" (claims 5–6) and "the collected data recited in claim 16" (claims 17–18).

//

//

7

E.    **"alert" / "notification" / "alarm"** *('655 Patent at Claims 1, 7, 8, 12, 19, 20)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construed:<br><br>"visual, auditory, or haptic signal that indicates an event" | *Indefinite*<br><br>Alternative construction for alert: "urgent warning transmitted to the user that can be observed regardless of active use of the wireless communication terminal" |

The term "alert" appears in claims 1 and 12 of the '655 patent, while the term "notification" appears in claims 8–9, and 20–21. The term "alarm" appears in claims 9 and 21. Claims 1 and 12 recite generating "*an alert*" while claims 9 and 20 require the alert "comprises a *notification*". Claims 10 and 21 in turn require that the "method of providing notification comprises at least one of the following: *alarm* . . . and vibration . . . ."

Tile argues that because the '655 Patent uses different words in separate claims, these words must have presumptively different meanings, with a hierarchical structure wherein "alarm" is a subset of "notification" which is in turn a subset of "alert." Tile argues that the specification and extrinsic evidence fail to provide sufficient specificity to determine the metes and bounds of these terms, and that they are therefore indefinite. Cellwitch argues that there is no support for such a hierarchical structure in the evidence, and that the terms are used interchangeably to "distinguish between different alerts in different contexts." (Cellwitch Br. at 10.)

The Court finds persuasive Tile's argument that the claim language implies a hierarchical structure for the terms "alert" and "notification", wherein an "alert" may be but is not limited to a "notification". However, the Court does not find that the claim language supports such a structure for "alarm" since the claim recites that "the *method of providing* notification comprises . . . alarm." The Court is also unconvinced that a POSITA would be unable to discern the metes and bounds of these terms, based on their plain and ordinary meaning. The Court has the following questions:

1.    Don't the terms "alert," "notification," and "alarm" have fairly standard meanings in the context of wireless devices? For example, if one were to discuss cell phone "notifications" or "alarms" it would seem that most people would understand what

8

these mean.

    a.    Does Tile contend that these meanings are indefinite?

    b.    If Tile does not contend that the standard meaning of these terms is indefinite, what reason does Tile have for departing from these meanings?

2.    Does Cellwitch propose the same alternative construction for all three terms or just the term "alert"?

    a.    If Cellwitch proposes its construction for just "alert," what are its proposed constructions for the other terms?

The Court **tentatively** finds no construction necessary.

**F.**    **"learning module that uses the collected data to provide at least one service to a respective user" (claim 5) / "providing, using a learning module, at least one service to a respective user based on the collected data" (claim 17)** *('655 Patent at Claims 5-9, 17–21)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| No construction necessary. This term is not subject to 35 U.S.C. § 112(6). <br><br> If construed: <br><br> "software component that uses data collected and stored by the [database (claim 5) / processor (claim 17)] to provide one or more functions to a user" | Invoking pre-AIA 35 U.S.C. § 112(6). Indefinite, no sufficiently disclosed corresponding structure or algorithm |

The term "learning module . . ." appears in claims 5 and 17 of the '655 Patent, and claims 6–9 and 18–21 which depend upon claims 5 and 17. Claim 5 recites "*a learning module that uses the collected data to provide at least one service to a respective user*" and claim 17 recites "providing, *using a learning module, at least one service to a respective user based on the collected data.*"

Tile argues that this term is written in functional language and subject to pre-AIA 35 U.S.C. § 112(6), and is indefinite because the specification does not adequately disclose the structure or algorithm performing the function. Cellwitch argues that § 112(6) does not apply,

because the term "learning module" has a "sufficiently definite meaning as a name for structure, namely a 'software component that . . . .'" (Cellwitch Br. at 12–13.)  Cellwitch further argues that § 112(6) should not apply to the '655 Patent method claims under Federal Circuit law. The Court has the following questions:

1. Is the "learning module" of the '655 Patent claims software or hardware?
2. Cellwitch argues that under *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), there is a rebuttable presumption that claim language that does not use the word "means" is not subject to 35 U.S.C. § 112(6).  What standard should the Court use to determine whether that presumption is overcome here?
3. What is Cellwitch's best argument (and supporting evidence) why the Court should not follow *Williamson's* reasoning in holding that "module" is a nonce term?
4. Cellwitch argues that pre-AIA 35 U.S.C § 112(6) does not apply because the term "learning module" is not a nonce term but instead has a "sufficiently definite meaning as a name for structure, namely a 'software component that . . . .'" (Cellwitch Br. at 12–13.)
   a. What is the "structure" of the "software component"?
   b. Is there any distinction between "software component" and "software program" or "software code"?
5. If the Court finds that pre-AIA 35 U.S.C § 112(6) were to apply, does Cellwitch concede the term is therefore indefinite?
   a. If not, what evidence discloses the relevant structure or algorithm of the "learning module"?
6. Does the specification or file history explicitly define the term "learning module"? If so, what is the definition?

The Court **tentatively** rules that this term is indefinite under pre-AIA 35 U.S.C. § 112(6).

      **G.**     **"wherein the at least one service comprises providing a user default profile generated based on the collected data, the user default profile defining the proximity threshold"** *('655 Patent at Claims 6, 18)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| No construction necessary.<br><br>If construed:<br><br>"one function is the automatic generation of a user profile based on data collected and stored by the [database (claim 6) / processor (claim 18)], wherein the user profile defines the proximity threshold" | *Indefinite* |

Claims 6 and 18 of the '655 Patent recite systems of claim 5 and 17 "wherein the at least one service comprises providing a user default profile generated based on the collected data, the user default profile defining the proximity threshold." Claims 5 and 17 depend on claims 4 and 16, which recite that "the collected data comprises data relating to at least one of the following: time of day the wireless device exceeds the proximity threshold, location at which the wireless device exceeds the proximity threshold, and the frequency at which the wireless device exceeds the proximity threshold"

Tile argues this term is indefinite because "[c]laims 6 and 18 circularly require the use of 'the collected data' to define 'the proximity threshold,' while the underlying collected data must itself be based on the same 'proximity threshold' that would not yet be defined." (Tile Br. at 21.) Cellwitch argues that this argument depends on Tile's faulty construction of "the collected data" in claims 5–6 and 17–18, and that the specification "confirm[s] that the "default" profile need not be generated before any data is collected at all." (Cellwitch Reply at 14.)

The Court finds Cellwitch's argument unpersuasive, as it is unclear how Cellwitch's proposed construction avoids the issue of circular reasoning that underpins Tile's argument. The Court has the following questions:

    1.    How does Cellwitch's proposed construction avoid the issue of circular logic as Tile argues? It appears to the Court that even under Cellwitch's proposed

11

construction, the data collected must be based on the proximity threshold, but that proximity threshold must also be defined by a user profile based on already collected data.

2. If the Court adopts its tentative ruling that claims 5 and 16 are indefinite under pre-AIA 35 U.S.C. § 112(6), do the parties find it appropriate for the Court to nonetheless construe this term, which appears in claims that depend upon claims 5 and 6?

The Court **tentatively** rules that this term is indefinite.

H. **"[providing an option to not generate] the alert"** *('655 Patent at Claims 7-9, 19-21)*

| Cellwitch's Proposed Construction | Tile's Proposed Construction |
|---|---|
| No construction necessary. If construed: "the alert that the wireless communication terminal is configured to generate in the first [element of claim 1 / step of claim 12]" | *Indefinite* |

Claims 7 and 19 recite systems wherein "the at least one service comprises providing an option to not generate *the alert* . . . ." Claims 8 and 20 recite systems wherein "*the alert* comprises a notification," and claims 9 and 21 depend upon claims 8 and 20.

The parties dispute whether the term "the alert" as recited is indefinite. Tile argues the term is indefinite because independent claims 1 and 12 recite generating two different alerts, and claims 7–9 and 19–21 therefore do not have a reasonably certain predicate such that a POSITA would be able to ascertain which alert the claims refer to. Cellwitch argues because claims 7–9 and 8–21 recite "the associated wireless device," the evidence demonstrates that " 'the alert' recited in claims 7–9 and 19–21 clearly corresponds to 'the alert' recited in the first element of claim 1 and first step of claim 12." (Cellwitch Reply at 15.)

The Court has the following questions:

1. If the Court adopts its tentative ruling that claims 5 and 16 are indefinite under pre-

12

AIA 35 U.S.C. § 112(6), do the parties find it appropriate for the Court to nonetheless construe this term, which appears in claims that depend upon claims 5 and 6?

The Court **tentatively** adopts the construction: "the alert that the wireless communication terminal is configured to generate in the first [element of claim 1 / step of claim 12]."

IT IS SO ORDERED.

Dated: January 11, 2024

_____
JEFFREY S. WHITE
United States District Judge